PEOPLE *v.* WRIGHT.

1. HOMICIDE—MURDER IN THE FIRST DEGREE—EVIDENCE.
   In prosecution for murder in the first degree, proof presented on behalf of the people made a case for jury determination (Act No. 328, § 316, Pub. Acts 1931).

2. SAME—INTENT—EVIDENCE OF OTHER OFFENSES.
   In prosecution for murder in the first degree, wherein it was admitted that defendant was present at gasoline station when attendant was fatally shot and defendant on direct examination claimed the shooting was accidental although in alleged previous confessions to police officers he admitted the holdup and taking of money, issue was presented as to whether defendant was present with intent to rob or in the actual act of robbing and permitted introduction of competent rebuttal testimony showing criminal intent by his admissions of commission of other like crimes (3 Comp. Laws 1929, § 17320; Act No. 328, § 316, Pub. Acts 1931).

3. CRIMINAL LAW—DEFENDANT AS WITNESS IN OWN BEHALF—CROSS-EXAMINATION.

　　In a prosecution for crime a defendant who takes the stand as a witness in his own behalf is subject to cross-examination as to any material fact or circumstance.

4. HOMICIDE — INTENT — CROSS-EXAMINATION — CONFESSIONS — OTHER OFFENSES.

　　In prosecution on charge of murder in the first degree wherein defendant became a witness in his own behalf, admitted presence at scene of crime but claimed shooting was accidental, it was competent as a part of his cross-examination to confront him with and to disclose to the jury any lawfully-obtained confession or admission of the defendant tending to prove his intent to rob, such as confessions tending to prove he committed other like offenses a relatively short time before or after the offense for which he was on trial where instruction to jury left it for their determination as to whether or not the confession had been made voluntarily (3 Comp. Laws 1929, § 17320; Act No. 328, § 316, Pub. Acts 1931).

5. CRIMINAL LAW—OTHER OFFENSES—PROOF OF INTENT—STATUTES.

　　Purpose of statute permitting in criminal cases the use of proof of like acts or other acts of defendant to show intent or absence of accident even though it might show or tend to show the commission of another or prior or subsequent crime was to make testimony relevant which might otherwise not be so (3 Comp. Laws 1929, § 17320).

6. SAME—IMPEACHMENT OF WITNESSES ON COLLATERAL ISSUES—PROOF OF INTENT—OTHER OFFENSES.

　　While ordinarily a witness may not be impeached upon questions relating to a separate and distinct offense at a different time and place since it would be a collateral issue, where intent in a criminal case is material matter, testimony may be admitted as to like acts or other acts of defendant to show intent or the absence of accident on his part even though such proof may show or tend to show the commission of another or prior or subsequent crime by him (3 Comp. Laws 1929, § 17320).

7. SAME—DEFENDANT AS WITNESS—WAIVER OF CONSTITUTIONAL RIGHTS.

　　While one accused of crime may not be compelled to testify either on his own behalf or for the people, if he does elect to testify he waives his constitutional right of refusing to answer any question material to the case even though the answer tends to prove him guilty of some other crime than that for which he is on trial (Const. 1908, art. 2, § 16).

8. HOMICIDE—INTENT—OTHER OFFENSES—COMPETENCY OF EVIDENCE.
    In prosecution for murder in the first degree wherein after de-
        fendant had testified his guilt was solely a matter of intent,
        testimony as to commission of other offenses shortly before or
        subsequent to offense charged for purpose of showing intent
        was properly admitted as rebuttal testimony and did not vio-
        late provision of Constitution that no person shall be compelled
        in any criminal case to be a witness against himself as such
        testimony was material to the issue (Const. 1908, art. 2, § 16;
        3 Comp. Laws 1929, § 17320; Act No. 328, § 316, Pub. Acts
        1931).

Appeal from Recorder's Court of the City of
Detroit; Van Zile (Donald), J.   Submitted April 11,
1946.   (Docket No. 86, Calendar No. 43,215.)   De-
cided June 3, 1946.   Rehearing denied September 11,
1946.

Donald L. Wright was convicted of murder.   Af-
firmed.

*Edward N. Barnard,* for appellant.

*John R. Dethmers,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, and *Gerald K. O'Brien,*
Prosecuting Attorney, and *Michael A. Guest,* As-
sistant Prosecuting Attorney, for the people.

NORTH, J.   Donald L. Wright on trial by jury was
convicted in the recorder's court of Detroit of
murder in the first degree.   He was sentenced to
life imprisonment.   His motion for a new trial was
denied.   He has appealed and presents in support
of his claim of right to a new trial the following
questions.

"Did the trial court err in admitting into evidence
the so-called 'confessions' of other offenses, and in
permitting cross-examination of defendant thereon?

"Was defendant compelled to incriminate him-
self in violation of article 2, § 16, Const. (1908)?"

The people's claim is that on January 13, 1944, in a holdup of a gasoline station appellant shot and killed the attendant, Arthur Wilkie. At the trial the prosecution's proof made a case for jury determination. The defendant testified in his own defense, and it is the examination of defendant that has given rise to the two questions above noted.

Shortly after the shooting third parties calling at the gasoline station discovered the dead attendant on the floor in a sitting position leaning against some oil cans. Appellant had left the scene and was not taken into custody until the early morning of February 5th, 23 days after the date of the alleged offense. The arrest seems to have occurred because police authorities were notified about 10:30 the evening of February 4th of a holdup which had just occurred. Following this information police officers went to the home of defendant's mother, and remained there until defendant came home in an automobile about 5:30 a. m. when defendant was arrested. A search of his person, his car, and the basement where he slept was made, but nothing incriminating was found. Upon being interrogated by the officers defendant stated the automobile he was driving belonged to his mother, that he had been to a dance and after the dance had gone down town.

At the time of his arrest defendant was 21 years of age. He was married in 1941, but was separated from his wife at the time of his arrest, and had gone to live with his mother. He was awaiting induction into the merchant marine service and in the meantime was employed at a part-time job with the Fenkell Auto Service. Within the two days following defendant's arrest, according to the testimony, he made confessions. Seemingly in the first instance defendant's confessions or admissions were

made to police officers and were not reduced to writing; but on the afternoon of the day he was arrested his statement or confession in the form of question and answer was taken at the prosecutor's office by an assistant prosecutor; and again in the evening of the following day defendant made another confession or statement at the prosecutor's office which was stenographically taken in the form of questions and answers. In these confessions defendant not only admitted that he committed the offense of which he was convicted in the instant case, but also he admitted he committed like holdups on four occasions shortly prior to the one in the instant case and on two subsequent occasions. Defendant claims the alleged confessions were obtained by means of promises of official cooperation in securing lenient disposition of his case, continuous and prolonged questioning following his arrest, depriving defendant of sleep and food, threats to arrest defendant's mother and involve other members of his family, and assaults upon defendant by the police officers. There was denial by the officers of the extent of the questioning, the claimed assaults upon defendant, as well as denial of threats or promises which defendant asserted were made to him. As to defendant's being deprived of food, one officer testified defendant "was served food," but others testified they did not know since feeding prisoners was not part of their duties. In substance in the confessions made defendant said that on the date of the alleged offense between 9 and 10 p. m. he went to the gasoline station in question, held it up, took about $50, and escaped in his car which was parked near by. That he had a .32 caliber revolver, that he did not intend to hurt anyone, but when he stated to the attendant in the gasoline station "This is a holdup," the attendant said "No punk kid is going to stick

me up," and thereupon the attendant with his right hand "grabbed" defendant by the neck and with his left hand "grabbed the right arm in which he had the revolver;" that defendant did not remember pulling the trigger but he knew that the gun went off and the attendant fell.

The testimony on direct examination given by defendant in his own behalf was of very different purport than the statements in his confessions. In his direct testimony he stated on the date of the alleged offense defendant drove with an automobile to see an uncle about 6 o'clock in the afternoon, that after leaving the uncle's place defendant stopped at a beer garden and from there he went to the gasoline station where the shooting occurred, that he asked the attendant to use the telephone which was a side wall pay phone, and defendant continued with the following testimony:

"During the time I was making my telephone call, I heard a buzzing on the phone when I tried to make another phone call, after I had finished my first one, so I took the receiver cap apart, that is the cap of the receiver, and Mr. Wilkie walked in as I was at the phone, and walked over and we got into an argument, he grabbed me around the neck from behind and he must have either felt or seen the gun in my pocket because he made a grab for my pocket, when he did, we started wrestling for the gun, and the gun went off. He was struck. He did not fall. I helped him to the floor. I offered to assist him. I did not deliberately fire the gun. I say there was a scuffle. I believe I had an overcoat on. The gun (offered in evidence) was in my overcoat pocket.  *  *  *  I had to have the gun as I carried it in the car, because I carried large sums of money at times for Mr. Connor (defendant's employer) to and from the bank. When I entered that gas station I did not intend to commit the

crime of robbery armed.   *   *   *   I did not take anything of value.''

Obviously it was essential to the prosecution's case to meet the very material discrepancy between defendant's confessions wherein he had admitted the holdup and taking money incident to which the fatal shooting occurred; whereas the purport of his direct examination was that defendant neither contemplated nor perpetrated a robbery and that the fatal shooting was accidental. Clearly the foregoing condition of the record raised as an essential issue the matter of defendant's intent. The prosecution claims that this opened the door for testimony as to defendant's having committed any other offenses which involved a like intent. It is the people's claim that under the circumstances defendant's confessions, if voluntarily made, as to his having committed other like offenses within a reasonable time either before or after that charged in the instant case, became competent, relevant and material testimony in the instant case.

On the other hand, as indicated by the first of the above-quoted questions presented by appellant, it is asserted in his behalf: ''It was error to admit into evidence so-called confessions of other offenses, and to permit the cross-examination of defendant thereon.'' In the brief for appellant it is stated: ''it (the prosecution) was from the beginning to the end of the trial burdened with the onus of proving a specific intent to rob. Proof of such intent was a necessary element of its primary case.'' Admittedly the homicide in the instant case would not constitute murder in the first degree unless defendant was at the scene of the alleged crime either with intent to rob or in the actual act of robbing. Act No. 328, § 316, Pub. Acts 1931 (Comp. Laws Supp. 1940,

§ 17115–316, Stat. Ann. §, 28.548). In consequence thereof appellant's contention as stated in his brief is as follows:

"It is, we think, therefore obvious that the required proof of the commission of the offense charged must carry with it an implication or presumption of the necessary criminal intent—in this case the specific intent to rob.

"Under these circumstances, proof of other like offenses is never admissible, and no such case is an exception to the general rule that excludes proof of other offenses."

We are not in accord with the foregoing contention. By statute it is provided:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant." 3 Comp. Laws 1929, § 17320 (Stat. Ann. § 28.1050).

Appellant cites and quotes from a large number of our decisions in an attempt to sustain his contention that since intent to rob was an essential element in establishing the prosecution's main case, it was error to receive in evidence, incident to rebutting defendant's testimony, his admissions or confessions of having committed other offenses involving a like intent. We shall not extend our opinion to the undue length which would be neces-

sitated by detailing the manner in which each of such cases is distinguishable from the case at bar. In none of them were the attendant circumstances at the trial comparable to those in the instant case. In some of the cited cases the defendant did not testify in his own behalf, in some the defense was an alibi or complete disavowal of any connection with the offense charged, and as a result intent was not the crux of the prosecution as in the instant case. In some of the cases cited by appellant we expressly held there was lacking the requisite of a similar intent, and in some *intent* was not an element of the offense charged, as in manslaughter cases.

The instant case is materially different. Here the defendant admitted everything essential to the people's case, except his intent to rob. In appellant's reply brief it is stated: "The defense was negation of intent to rob the gasoline station." After defendant testified the only controverted issue was that of intent, which defendant denied, and in negativing intent claimed the homicide was an accident. The prosecuting attorney could not and did not know that the prosecution of the case would take on that aspect until defendant had testified. Thereupon it was proper for the prosecutor in rebuttal of defendant's testimony to show intent by cross-examination or any other competent testimony, including defendant's admissions or confessions, if lawfully obtained. Under the circumstances of this case, the fact, stressed by appellant, that from the inception of and throughout the trial the prosecution had the burden of proving defendant committed a robbery or had the intent to rob, did not deprive the prosecution of its right to rebut defendant's testimony. We are in accord with the State's contention in this particular, as stated in its brief:

"Defendant * * * states that the only proof necessary and admissible in the case at bar was proof of the robbery, and that such proof carries with it an implication or presumption of the necessary criminal intent, and, therefore, we are barred from offering proof of similar crimes. This theory is partially true. * * * But, when defendant took the stand and admitted the killing but denied the robbery and stated the killing was accidental, we were then permitted to rebut his theory of accident to show criminal intent by his admissions that he has committed other similar crimes. At this point, our statutes (above quoted) permit the introduction of evidence of similar offenses."

As a witness in his own behalf defendant was subject to cross-examination as to any material fact or circumstance (*People* v. *Roxborough,* 307 Mich. 575); and it was competent as a part of his cross-examination to confront him with and to disclose to the jury any lawfully-obtained confession or admission of the defendant tending to prove his intent to rob. That it is competent in proving intent to take testimony disclosing other like offenses committed by the accused has long been the law in this State. It was so held in *People* v. *MacGregor,* 178 Mich. 436. We quote a paragraph from the headnotes:

"On a trial for homicide, evidence that a brother of deceased had died of poisoning while he was under the care of respondent physician, and from the same drug, was properly received in evidence as having a bearing on the issue of intent, absence of mistake or accident and the identity of the guilty person. * * * Nor was the prosecution precluded from showing actual intent or malice because the law would imply intent to kill from the giving of a poisonous drug."

Under the circumstances of the instant case the trial court was not in error in admitting in evidence on cross-examination of defendant his admissions or confessions, if lawfully obtained, which admissions or confessions tended to prove that defendant committed other like offenses a relatively short time before or after the commission of the alleged offense for which he was on trial. Under our decisions and the statute above quoted such testimony was competent to prove an intent on the part of defendant, which he had denied on his direct examination.

"The court did not err in permitting testimony to be introduced in reference to other 'intent' transactions. Such testimony is in accordance with the provisions of 3 Comp. Laws 1929, § 17320. *People* v. *Armstrong*, 256 Mich. 191; *People* v. *Dixon*, 259 Mich. 229, and *People* v. *Kolowich*, 262 Mich. 137, and see other authorities therein cited." *People* v. *Hopper*, 274 Mich. 418, 425.

We are of the opinion that the purpose or object of the statute was correctly stated by Justice POTTER:

"The object of the statute above quoted was to make testimony relevant which might otherwise not be so; to broaden the scope of inquiry as to similar transactions; to make relevant evidence of transactions which in the absence of the statute would not be relevant. Ordinarily a witness may not be impeached upon questions relating to a separate and distinct offense at another time and place. A witness may not be impeached upon a collateral issue. *Mills* v. *Warner*, 167 Mich. 619. But the purpose and object of the statute above quoted was to do away with the rule as to proof of other offenses and permit the introduction of such testimony even though it might show or tend to show the commission of another prior or subsequent offense by the defendant." *People* v. *Rose*, 268 Mich. 529, 535.

In connection with the foregoing phase of this appeal, it is pertinent to note that the issue as to whether defendant's confessions or admissions were voluntarily made was carefully submitted to the jury. Incident to this phase of his charge to the jury the trial court said:

"Therefore, before you are at liberty to consider the contents of any of these statements, you must first determine as a matter of fact, whether or not the statement was or was not voluntarily made. You should wholly disregard any statement that was not made voluntarily, but any statement that you believe beyond a reasonable doubt to have been made voluntarily, that is to say, it was not procured by threat, violence, or promises or other unlawful means, you can consider it and give it such weight as you may deem it entitled to. * * *

"It was solely in view of this testimony (as to intent) that this court permitted the prosecuting attorney to cross-examine the defendant concerning certain episodes which the people claim happened at other gas stations on other occasions, and the statements read had been used by him pertaining thereto."

The remaining ground for reversal urged in defendant's brief is that he "was compelled to incriminate himself in violation of the provisions of the Constitution 1908, art. 2, § 16," which reads:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

As stated in his brief, appellant's claim is that: "the cross-examination, or other examination of any witness, whether defendant or not, is limited to the extent that he cannot be interrogated with reference to other unrelated offenses if his testimony per-

taining thereto tends to incriminate him. If he is required to so testify, it is in violation of the constitutional provision above set forth." But the other offenses about which defendant was cross-examined were not "unrelated." They had an evidentiary bearing on defendant's intent. As applied to defendant in the instant case, appellant's contention is not tenable. In his brief appellant cites and relies upon *People* v. *Crow,* 304 Mich. 529. But in that case, unlike the instant case, we stated that the questions asked of defendant on cross-examination were "irrelevant to the issue;" and further the question of Crow's guilt did not turn (as in the instant case) solely on the matter of intent. His defense was that he was not present at the time and place where the offense was committed and that he had no part therein. In the cited case we said:

"Crow, although not obliged to do so, voluntarily took the stand as a witness in his own behalf, and thereby waived his constitutional privilege against answering self-incriminating questions *material to the issue.* As to questions concerning the facts of the case and those affecting his credibility, he was subject to cross-examination, but the trial judge committed prejudicial error when he permitted the prosecution to ask Crow questions irrelevant to the issue and having a tendency to bring in other charges."

In *Pitcher* v. *People,* 16 Mich. 142, also relied upon by appellant, the *intent* of the witness for the people, who was being cross-examined by defendant's counsel, was in no way involved. The witness, not a defendant, claimed his constitutional right not to answer a question on cross-examination on the ground that his answer would incriminate him incident to another offense, entirely unrelated to that for which the defendant was on trial. A headnote to this case reads:

"When an accomplice consents to be used by the prosecution as a witness, while he is compelled, on cross-examination, to testify fully concerning the transaction under investigation, he cannot be forced to testify as regards his criminality in other cases."

Contrary to appellant's contention, his confessions or admissions, if lawfully obtained, were competent proof bearing on intent (*People* v. *Mitchell*, 298 Mich. 172), and they could be proven either by his cross-examination or by competent direct proof. In *People* v. *Robinson*, 306 Mich. 167, 176, citing several of our earlier decisions, we held:

"One who is on trial for a crime cannot be compelled to testify, either on his own behalf or for the people. However, if he elects to do so, he is held to have waived his constitutional right of refusing to answer any question material to the case, even though the answer tends to prove him guilty of some other crime than that for which he is on trial."

The record does not disclose that appellant was compelled to incriminate himself in violation of his constitutional rights. The verdict and judgment entered in the circuit court are affirmed.

Butzel, C. J., and Carr, Sharpe, Boyles, Reid, and Starr, JJ., concurred. Bushnell, J., took no part in the decision of this case.