PEOPLE v JOHNSON

Docket No. 53591. Submitted May 11, 1982, at Detroit.—Decided
March 10, 1983. Leave to appeal applied for.

Phillip C. Johnson was convicted of armed robbery and possession
of a firearm during the commission of a felony, Wayne Circuit
Court, Myron H. Wahls, J. Defendant appeals, alleging that the
trial court erred in ruling that the prosecutor would be allowed
to present evidence of defendant's prior acts in rebuttal if
defendant were to present an intoxication defense, that he was
denied effective assistance of counsel, and that the trial court
impermissibly foreclosed the possibility of having testimony
reread to the jury if the jury were to request such a reading.
*Held:*

1. The use of evidence of prior similar acts to show the
defendant's intent is proper where the lack of intent has been
put in issue by presentation of an intoxication defense to a
specific intent crime. The trial court recognized that the evi-
dence would be admissible only if it satisfied the requirements
of the rule of evidence concerning evidence of prior acts. The
defense of intoxication was not raised and defense counsel did
not insist on an offer of proof regarding the prior offense. The
trial court's ruling was not erroneous.

2. Review of the record indicates that the defendant was not
denied effective assistance of counsel. Defense counsel per-
formed at least as well as an attorney with ordinary skill and
training in criminal law and did not commit a serious error
which would require the granting of a new trial. The trial
court's admonition to the jury regarding its reluctance to
reread testimony to the jury during its deliberations did not
completely foreclose the possibility that testimony could be

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 320, 324.
[2] 29 Am Jur 2d, Evidence § 326.
[3] 21A Am Jur 2d, Criminal Law §§ 751, 986.
[4] 21A Am Jur 2d, Criminal Law §§ 752, 984.
[5, 6] 76 Am Jur 2d, Trial § 1041.
Right to have reporter's notes read to jury. 50 ALR2d 176.

reread. The court's statements did not constitute error requiring reversal.

Affirmed.

D. E. HOLBROOK, JR., J., dissented. He would hold that the trial court's statement that requests to have testimony reread were routinely denied completely foreclosed the possibility of having testimony reread. He would reverse and remand for a new trial.

## OPINION OF THE COURT

1. CRIMINAL LAW — PRIOR ACTS OF DEFENDANT — EVIDENCE.

A prosecutor may not use evidence of a defendant's prior similar acts to prove the defendant's intent in committing the crime charged until such time as that intent is at issue; such evidence may properly be introduced in rebuttal to a defendant's claim of lack of intent due to intoxication.

2. CRIMINAL LAW — PRIOR ACTS OF DEFENDANT — EVIDENCE.

The similarity of a defendant's other acts, evidence of which is introduced at trial, is not required to be as great when used to show that the offense being tried was not inadvertent, accidental, unintentional, or without guilty knowledge as when used to show a common scheme, plan, or design (MRE 404[b]).

3. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL.

Generally, a motion for a new trial is a prerequisite to appellate review of a claim of ineffective assistance of counsel; however, the absence of a motion for new trial or an evidentiary hearing is not fatal to appellate review where the details relating to the alleged deficiencies of the defendant's trial counsel are sufficiently contained in the record to permit the Court of Appeals to reach and decide the issue.

4. APPEAL — TRIAL STRATEGY — ASSISTANCE OF COUNSEL.

The Court of Appeals is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy.

5. TRIAL — JURY — REREADING TESTIMONY.

Whether testimony is read back to a jury upon its request, and the extent of such reading, is within the sound discretion of the trial judge; however, it is error requiring reversal for a trial court to completely foreclose the rereading of testimony to the jury during deliberations.

DISSENT BY D. E. HOLBROOK, JR., J.

6. TRIAL — JURY — REREADING TESTIMONY.
   *A trial judge impermissibly foreclosed the possibility of rereading testimony to the jury upon its request during deliberations when the judge said "I routinely deny" such requests.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Larry Roberts,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith),* for defendant on appeal.

Before: BEASLEY, P.J., and D. E. HOLBROOK, JR., and D. C. RILEY, JJ.

PER CURIAM. On April 11, 1980, defendant, Phillip Carl Johnson, was convicted by a jury of armed robbery, in violation of MCL 750.529; MSA 28.797, and possession of a firearm in the commission of a felony, in violation of MCL 750.227b; MSA 28.424(2). After being sentenced to not less than 6 years nor more than 15 years in prison on the armed robbery count, plus 2 years on the felony-firearm count, defendant appeals as of right.

Our review of the record discloses that on the morning of February 9, 1980, defendant, accompanied by a female companion, robbed a Payless Shoe Store in Lincoln Park of money and merchandise at gunpoint. Shortly thereafter, while travelling in an automobile, defendant and his female accomplice were stopped by two River Rouge police officers. Examination of the vehicle's trunk disclosed the merchandise and money taken in the armed robbery.

Following the recitation of *Miranda*[1] warnings at

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

the River Rouge Police Department, defendant admitted his involvement in the offense to one of the arresting officers, Norman Meita.

On appeal, defendant raises three issues. First, he maintains that the trial court erred by holding that proof of another armed robbery would be admissible to rebut an intoxication defense, without first having determined if the other bad act satisfied the evidentiary requirements for admission.

After presenting six of his ten witnesses at trial, the prosecutor informed defense counsel and the trial judge that, if defendant raised an intoxication defense, he intended to call rebuttal witnesses who would testify concerning a similar armed robbery which allegedly was committed by defendant. Inasmuch as defense counsel had reserved her opening statement, the prosecutor was uncertain whether defendant was planning on invoking an intoxication defense. Defendant's counsel objected to the introduction of the prospective rebuttal testimony on the grounds that the rebuttal witnesses were unendorsed and that the prejudicial impact of the evidence outweighed its probative value.

In ruling that testimony regarding the other armed robbery was proper rebuttal testimony to an intoxication defense, the trial court stated:

*"The Court:* The court has to determine whether or not the testimony offered is truly rebuttal testimony. Apparently the leeway to do that or the range of discretion to do that is somewhat wider in civil matters than it is in criminal matters, and I suppose I understand that. But the question is whether or not—there seems to be some justification in the case law for the use of such evidence in anticipation or in response to a defense raised by the defense. That is what the case talks about, I think.

"I have read *Parker* and reread *Parker [People v Parker,* 65 Mich App 592; 237 NW2d 572 (1975)], and at first this case was quoted as a proposition or quoted as precedent for the proposition that scheme and plan testimony can never be offered as rebuttal evidence. That was the headnote kind of conclusion. But then it goes on to say it may only be introduced when it tends to directly prove—disprove the exact testimony given by a witness.

"I would find under those circumstances that it is proper rebuttal testimony *if it satisfies all the other requirements."* (Emphasis added.)

Defendant contends that the trial court abused its discretion by ruling that evidence of the other bad act would be admissible to rebut an intoxication defense, for the prosecutor had not established that the other bad act was probative of demonstrating defendant's intent in committing the charged offense.

MRE 404(b), the evidentiary rule relating to other bad acts, provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged."

In *People v Cobb,*[2] this Court upheld the trial court's admission of evidence of the defendant's prior bad act because the defense of an accident was claimed by defendant and, thus, his intent was a material issue in the case.

[2] 82 Mich App 167, 170; 266 NW2d 451 (1978).

In *People v Spillman*,[3] we discussed the materiality requirement regarding the introduction of evidence of a prior bad act to demonstrate intent:

"The materiality requirement, then, is designed to cover those cases where intent—or any of the other items on the statutory list—is an important issue in the case either because it is contested by defendant, * * * or because it is necessary to establish identity, *i.e.*, 'to show that defendant was the one who intended to do the act'." (Citations omitted.)

In the within matter, the prosecutor was prohibited from introducing evidence of the other armed robbery until defendant raised the issue of lack of a specific intent to commit armed robbery.[4] A prosecutor properly may introduce evidence of other bad acts during the rebuttal stage of his case as, in instances similar to the within matter, he cannot use the evidence until the matter which it tends to disprove, repel, or contradict is in issue.[5]

In *People v Wright*,[6] the Supreme Court discussed this issue:

"The instant case is materially different. Here the defendant admitted everything essential to the people's case, except his intent to rob. In appellant's reply brief it is stated: 'The defense was negation of intent to rob the gasoline station.' After defendant testified the only controverted issue was that of intent, which defendant denied, and in negativing intent claimed the homicide was an accident. The prosecuting attorney could not and did not know that the prosecution of the case would take on that aspect until defendant had testified. Thereupon it was proper for the prosecutor in rebuttal

---

[3] 63 Mich App 256, 261; 234 NW2d 475 (1975), *rev'd on other grounds* 399 Mich 313; 249 NW2d 73 (1976).

[4] *People v Duncan*, 402 Mich 1, 12-13; 260 NW2d 58 (1977).

[5] *People v Wright*, 315 Mich 81; 23 NW2d 213 (1946).

[6] *Id.*, 89-90.

of defendant's testimony to show intent by cross-examination or any other competent testimony, including defendant's admissions or confessions, if lawfully obtained. Under the circumstances of this case, the fact, stressed by appellant, that from the inception of and throughout the trial the prosecution had the burden of proving defendant committed a robbery or had the intent to rob, did not deprive the prosecution of its right to rebut defendant's testimony. We are in accord with the State's contention in this particular, as stated in its brief:

" 'Defendant * * * states that the only proof necessary and admissible in the case at bar was proof of the robbery, and that such proof carries with it an implication or presumption of the necessary criminal intent, and, therefore, we are barred from offering proof of similar crimes. This theory is partially true. * * * But, when defendant took the stand and admitted the killing but denied the robbery and stated the killing was accidental, we were then permitted to rebut his theory of accident to show criminal intent by his admissions that he has committed other similar crimes. At this point, our statutes (above quoted) permit the introduction of evidence of similar offenses.' "

Professor Wigmore, in his treatise on evidence, elaborated on the rationale of using other bad acts to negate the defense of lack of intent:[7]

"It will be seen that the peculiar feature of this process of proof is that the *act itself is assumed to be done,*—either because (as usually) it is conceded, or because the jury are instructed not to consider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent. This explains what is a marked feature in the rulings of the courts, namely, a disinclination to insist on any feature of common purpose or general scheme as a necessary requirement for the other acts evidentially used. It is not here necessary to look for a general

---

[7] 2 Wigmore on Evidence (Chadbourn rev, 1979), § 302, p 245.

scheme or to discover a united system in all the acts; *the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent.* The argument is based purely on the doctrine of chances, and it is the mere repetition of instances, and not their system or scheme, that satisfies our logical demand." (Footnote omitted; emphasis added.)

The similarity of other acts to display that the act on trial was not inadvertent, accidental, unintentional, or without guilty knowledge is not required to be as great as in instances where a common scheme, plan, or design is sought to be proved.[8]

In the instant case, the trial judge recognized that the evidence of the armed robbery could be introduced only if it satisfied the requirements of MRE 404(b). While it would have been preferable for the prosecutor to make an offer of proof concerning the other offense,[9] we do not find error occurred owing to the lack of details of the other offense, as the intoxication defense was not raised and the defendant's counsel did not insist on a ruling or an offer of proof.

Because of the foregoing facts, this case is distinguishable from *People v Torrez*[10] and *People v Hill.*[11] In *Torrez*, the trial court, in a delivery of heroin case, admitted evidence of another heroin purchase without first receiving details of the other bad act.

Defendant also claims that he was denied effec-

---

[8] McCormick on Evidence (2d ed), § 190, p 450, fn 42.

[9] MRE 104(a), 1101(b)(1).

[10] 90 Mich App 120, 125; 282 NW2d 252 (1979).

[11] 99 Mich App 427, 429-431; 297 NW2d 691 (1980).

tive assistance of counsel because his trial counsel decided not to present an intoxication defense without first receiving a final ruling on the admissibility of the similar-act evidence.

When a claim of ineffective assistance of counsel is raised, a motion for new trial is ordinarily a prerequisite. Since the basis for such claims often alludes to matters outside of the record, a motion for a new trial furnishes a vehicle upon which to make a testimonial record for appellate review. However, in the within matter, the details relating to the alleged deficiencies of defendant's trial counsel are sufficiently contained in the record to permit us to reach and decide the issue.[12] Thus, the absence of a new trial motion or an evidentiary hearing is not fatal to this claim on appeal.[13]

In this case, the evidence was overwhelming. Not only was defendant identified by two employees of the Payless Shoe Store, he was apprehended near the scene of the armed robbery with the stolen money and merchandise. In addition, he confessed to the commission of the offense. Our review of the record discloses that defense counsel zealously represented defendant in a difficult, if not insurmountable, case.

This Court is reluctant to substitute its judgment for that of trial counsel pertaining to matters of trial strategy.[14] Under the standards adopted in *People v Garcia*,[15] we find that defendant's attorney performed at least as well as an attorney with ordinary skill and training in the

---

[12] *People v Krokker*, 83 Mich App 474, 477; 268 NW2d 689 (1978).

[13] *People v Means (On Remand)*, 97 Mich App 641, 645; 296 NW2d 14 (1980).

[14] *People v Mays*, 64 Mich App 453; 236 NW2d 513 (1975); *People v Lotter*, 103 Mich App 386; 302 NW2d 879 (1981).

[15] 398 Mich 250, 266; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).

area of criminal law, and that she did not commit a serious error that would require granting of a new trial.

Lastly, defendant maintains that the trial court erred in giving an instruction to the jury which foreclosed the possibility of having testimony re-read. Immediately subsequent to the impaneling and swearing-in of the jury, the trial court commented:

"Sometime after jurors begin deliberating I receive a note in which they say, 'We would like to hear the testimony of John Jones again.' I routinely deny that motion because to do so, to let you hear the testimony of one witness would have the tendency to emphasize that testimony as compared with the other testimony that you have heard. And so inasmuch as you are to decide the case based upon the testimony, there is no reason, unless under extraordinary circumstances, that the court would ever reread any testimony. So it becomes very important for you to listen carefully for the express purpose of recalling that testimony at a later time."

As a general rule, when a jury requests that testimony be read back to it, whether testimony is read and to what extent it is read rests within the sound discretion of the trial judge.[16]

In *People v Henry Smith*[17] and *People v Howe,*[18] the Supreme Court enunciated the doctrine that a trial court errs reversibly by completely foreclosing the rereading of testimony to the jury during deliberations. In contradistinction to the factual settings in *Henry Smith, supra,* and *Howell, supra,*

---

[16] *People v Walker,* 371 Mich 599, 610; 124 NW2d 761 (1963); *People v Cyr,* 113 Mich App 213; 317 NW2d 857 (1982).

[17] 396 Mich 109; 240 NW2d 202 (1976).

[18] 392 Mich 670, 676-678; 221 NW2d 350 (1974).

the trial judge in *People v Rodriguez,*[19] at the close of the prosecutor's proofs, instructed the jury to devote close attention because "this judge is not inclined after you go into deliberation to have testimony read back in any way". The *Rodriguez* majority found the instruction constituted reversible error, but the Supreme Court, in adopting Judge CAVANAGH's dissent, reinstated the conviction. In his dissent in *Rodriguez,* Judge CAVANAGH stated:[20]

"I do not read the trial court's statement to the jury as foreclosing the opportunity for the jury to have testimony reread. In both *People v Howe,* 392 Mich 670; 221 NW2d 350 (1974), and *People v Smith,* 396 Mich 109; 240 NW2d 202 (1976), the trial judge completely foreclosed the opportunity of having testimony reread. This is not the case here. This comment did not completely foreclose the opportunity, came at the close of the people's proofs and not at the time the jury was instructed, and clearly was intended to impress upon the jurors the importance of their paying attention to the testimony."

In the within matter, the trial court's admonition to the jury did not foreclose completely the opportunity for the jury to have testimony reread. Moreover, the trial court's comment occurred prior to the commencement of the case and, as in *Rodriguez,* was intended to make an impact upon the jurors as to the importance of paying attention to the testimony. Accordingly, we find that the trial court, unlike the trial courts in *Howe* and *Smith, supra,* did not err by apprising the jury that it routinely denied requests for the rereading of testimony.

[19] 103 Mich App 161; 302 NW2d 630 (1981), *rev'd* 411 Mich 872; 306 NW2d 102 (1981).

[20] 103 Mich App 161, 163-164.

Affirmed.

D. E. HOLBROOK, JR., J. *(dissenting)*. I would reverse upon the ground that the comments made by the trial judge to the jury, and set forth in the majority opinion, completely foreclosed the rereading of testimony to the jury during deliberations and hence was a violation of the doctrine expressed in *People v Henry Smith,* 396 Mich 109; 240 NW2d 202 (1976), and *People v Howe,* 392 Mich 670; 221 NW2d 350 (1974).

The majority's attempt to analogize the instruction in the instant case to that contained in *People v Rodriguez,* 103 Mich App 161; 302 NW2d 630 (1981), in my opinion is misplaced. In *Rodriguez* the trial judge stated "this judge is not *inclined* after you go into deliberation to have testimony read back in any way". (Emphasis supplied.) In the case at bar the trial judge stated, "Sometimes after jurors begin deliberating I receive a note in which they say, 'We would like to hear the testimony of John James again.' I *routinely deny* that motion because to do so * * *". (Emphasis supplied.)

According to *Webster's New Collegiate Dictionary* (G & C Merriam Co, 1974), there appears to be a vast difference between the words "inclined" and "routine". "Inclined" is defined as having inclination, disposition or tending. "Routine" is defined as a regular course of procedure. In short, the former means nothing more than a tendency. Such a word as it was used in *Rodriguez* would not effectively foreclose the right of the jury to have testimony reread and the Supreme Court, in adopting Judge CAVANAGH's dissent therein, properly so held. However, by using the words "routinely deny", as did the judge in the case at bar,

the jury was effectively foreclosed from asking
that testimony be reread since by the use of such
terms the judge effectively told the jury that as a
regular course of procedure such a request would
be denied. Such is different from telling a jury that
the judge has a tendency to deny such requests. In
short, in one instance the judge is telling the jury
that he leans to denial and in the other that as a
matter of course he does deny. There is a differ-
ence.

Accordingly, I would reverse defendant's convic-
tion and remand for a new trial.