*15 ZINTER, Justice
(concurring specially).
[¶ 32.] I join the opinion of the Court. I write to address the concurrence in result’s application of SDCL 19-12-5 (Rule 404(b)). The concurrence in result concludes that the prior sexual misconduct with the first adolescent was too remote and too dissimilar to be relevant under SDCL 19-12-5 (Rule 404). The concurrence in result bases its conclusion on State v. Fisher, 2010 S.D. 44, 783 N.W.2d 664. But the admission of the prior act in Fisher was reversed because that defendant was a juvenile at the time of the prior act while Armstrong was twenty-two years-old at the time of his prior act. Fisher expressly noted that the defendant’s juvenile status was “vital” to finding dissimilarity:
[Vital .. • because, as the United States Supreme Court recently observed, “As compared to adults, juveniles have a ‘lack of maturity and an underdeveloped sense of responsibility’; they ‘are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure’; and their characters are ‘not as well formed.’ ”
Fisher, 2010 S.D. 44, ¶ 30, 783 N.W.2d at 674 (quoting Graham v. Florida, — U.S. -, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010)).
[¶ 33.] Even more importantly, unlike Armstrong, Fisher “offered neither accident nor lack of intent as a defense,” the Rule 404(b) exceptions relied on by Judge Tucker in this case. See id. ¶ 11, 783 N.W.2d at 668. Rather, “[r]elying solely on the fact that Fisher denied committing the crimes charged [], the circuit' court ruled the prior conviction admissible under SDCL 19-12-5 (Rule 404(b)) to prove intent, identity, plan, design or scheme.” Id. ¶ 22, 783 N.W.2d at 672. We have often disapproved of this type of analysis broadly reciting the laundry list of possible SDCL 19-12-5 (Rule 404(b)) exceptions. See State v. Chernotik, 2003 S.D. 129, ¶ 30, 671 N.W.2d 264, 274-75; State v. Wright, 1999 S.D. 50, ¶ 17, n. 6, 593 N.W.2d 792, 800. But Judge Tucker did not utilize this type of laundry-list analysis. He allowed admission of the prior act only to rebut Armstrong’s mistake defense and to prove specific intent.
[¶ 34.] These specific purposes for the admission lead to a fundamental flaw in the concurrence in result’s similarity analysis. “The degree of similarity required for other act evidence will depend on the purpose for which it is offered.” Wright, 1999 S.D. 50, ¶ 16, 593 N.W.2d at 800. More similarity is required when evidence is offered to prove identity rather than when offered to prove common plan or design. State v. Big Crow, 2009 S.D. 87, ¶ 17, 773 N.W.2d 810, 815; Wright, 1999 S.D. 50, ¶ 19, 593 N.W.2d at 800-01. And the degree of similarity required for intent and absence of mistake are on the lower end of the spectrum. “[T]he similarity of other acts to display that the act on trial was not inadvertent, accidental, unintentional, or without guilty knowledge is not required to be as great as in instances where common scheme, plan, or design is sought to be proved.” People v. Johnson, 124 Mich.App. 80, 87, 333 N.W.2d 585, 589 (1983) (citing McCormick on Evidence (2d. ed.), § 190, p. 450, n. 42).
[¶ 35.] Thus, the concurrence in result’s heightened similarity standard in this case fails to recognize that where other acts evidence is offered to show intent, the prior act need “only be of the same general category to be relevant.” People v. McGhee, 268 Mich.App. 600, 611, 709 N.W.2d 595, 606 (2005) (citing People v. VanderVliet, 444 Mich. 52, 80, 508 N.W.2d 114, 128 (1993) (citing Edward J. Imwink-elried, Uncharged Misconduct Evidence, § 3:11 at 23)). As we have also concluded, *16 “evidence of prior acts need not be that of an identical offense but only of similar involvement reasonably related to the offending conduct.” State v. Steichen, 1998 S.D. 126, ¶ 30, 588 N.W.2d 870, 877; State v. Loftus, 1997 S.D. 94, ¶ 25, 566 N.W.2d 825, 830. “The litmus test is logical relevance rather than similarity.” Imwinkel-ried, Uncharged Misconduct Evidence, § 5.05 at 14 (Rev. ed.1999). See also Wright, 1999 S.D. 50, ¶ 25, 593 N.W.2d at 803 (stating that “404(b) requires that the evidence be offered for a logically relevant purpose”).
[¶ 36.] In this case, the prior act was logically relevant to prove specific intent to obtain sexual gratification from adolescents and to prove the absence of mistake. As the Michigan Supreme Court explained, “when the evidence is proffered to rebut innocent intent, to show motive, consciousness of wrongdoing, true plan, or knowledge,” distinctive similarity between other acts and the charge at issue is not required. VanderVliet, 444 Mich. at 69, n. 21, 508 N.W.2d at 124. Evidence of prior sexual assaults is logically relevant and probative of the defendant’s intent “because it negates the otherwise reasonable assumption that the contact described in testimony by [the victim] was accidental, as opposed for the purpose of sexual gratification.” Id. at 80-81, 508 N.W.2d at 129.
[¶ 37.] The concurrence in result focuses on certain factual dissimilarities in Armstrong’s age, his relationship with the victims, the anatomical and geographical location of the touchings, and the use of alcohol. It also focuses on dissimilarities in the legal elements of the two offenses. Although such dissimilarities are often important in identity cases, they have significantly less relevance in determining mens rea. In examining logical relevance to prove mens rea, simple unlawfulness of the charged and uncharged acts, similarity of the victims, similarity of the subject matter of the offenses, similarity of the physical elements of offenses, and similarity of state of mind are the determinative comparisons. Imwirikelried, § 5.09 at 30 (Rev. ed.1999). In this case both sexual acts were unlawful; both victims were adolescents; both acts involved adult sexual abuse of adolescents who either were or were dreamed by Armstrong to be lying naked; and, Armstrong believed that it was permissible to have sexual relations with adolescents. These similarities make it logically relevant; i.e., less likely under the doctrine of chances[2] that R.L. was mistaken about the nature of Armstrong’s hugging and touching and that Armstrong’s hugging and touching were without intent to obtain sexual gratification.
[¶ 38.] With respect to remoteness, Armstrong was incarcerated for twelve years between the two acts, but as the trial court observed, the relevant time period was the forty-eight hours after Armstrong’s release from prison when he instigated sexual contact with R.L. And this Court has “steadfastly refused to adopt an *17 inflexible rule on remoteness.” Wright, 1999 S.D. 50, ¶ 24, 593 N.W.2d at 802 (citing State v. Wedemann, 339 N.W.2d 112, 115 (S.D.1983) (stating that asserted remoteness of prior acts will “realistically depend upon their nature”)). See also State v. Ondricek, 535 N.W.2d, 872, 877 (S.D.1995) (holding that bad acts conducted twenty years earlier were not too remote); and State v. Christopherson, 482 N.W.2d 298, 302 (S.D.1992) (holding that molestation that occurred seventeen years earlier was not too remote).
[¶ 39.] Admission of prior acts evidence “is within the trial court’s discretion.” State v. Larson, 512 N.W.2d 732, 736 (S.D.1994). “Upon review of whether the trial court abused its discretion in admitting evidence of other wrongs we must be careful not to substitute our reasoning for that of the trial court. The test is not whether judges of this [C]ourt would have made an original ruling.” Id. “An abuse of discretion has been defined by this Court as a decision which is not justified by, and clearly against reason and evidence.” State v. Moeller, 1996 S.D. 60, ¶ 141, 548 N.W.2d 465, 495. It is not against reason and evidence to admit evidence of prior sexual relations with one adolescent to rebut an adult’s defenses of mistake and lack of specific intent to obtain sexual gratification from a second adolescent.

. The doctrine of chances is described in Van-derVliet:
This theory is widely accepted although its application varies with the issue for which it is offered. Where material to the issue of mens rea, it rests on the premise that "the more often the defendant commits an actus reus, the less is the likelihood that the defendant acted accidentally or innocently."
444 Mich. at 80, n. 35, 508 N.W.2d at 128 n. 35 (quoting Imwirikelried, § 3:11 at 22-23). See also 22 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure, § 5247, at 517-19 (1st ed. 1978)).
Often the absence of mistake or accident is proved on a notion of probability; i.e., how likely is it that the defendant would have made the same mistake or have been involved in the same fortuitous act on more than one occasion.