#25169-rev & rem-JKK

**2010 SD 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                         Plaintiff and Appellee,

v.

ERNEST ALBERT FISHER, JR.,                     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIRST JUDICIAL CIRCUIT
AURORA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SEAN M. O'BRIEN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

STEVEN R. BLAIR
Assistant Attorney General          Attorneys for plaintiff
Pierre, South Dakota                and appellee.

CHRIS A. NIPE of
Larson and Nipe                     Attorneys for defendant
Mitchell, South Dakota              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 16, 2009

OPINION FILED **06/09/10**

#25169

KONENKAMP, Justice

[¶1.]     Defendant was indicted on multiple rape and sexual contact offenses against his daughter. Fourteen years earlier, when he was seventeen, defendant committed a sexual offense with his thirteen-year-old stepsister. At trial on the current charges, the circuit court allowed the prosecution to present the prior conviction to the jury with all its details. Because defendant's prior offense was too remote in time and not sufficiently similar to the present charges, admission of the prior offense was an abuse of discretion and unfairly prejudicial. We reverse and remand for a new trial.

## Background

[¶2.]     Ernest Albert Fisher, Jr. (defendant) and his wife lived in Aurora County, South Dakota, with their blended family of eight children and stepchildren. On September 13, 2007, I.F., defendant's daughter, posted an entry on an Internet blog site:

> my dad sexually abuses me and I don't want to lose my step
> mom she is my only mother i have what should i do? he has
> been doing this since i was 8 i hate him he has hit me twice help
> me!!!!!!!!!

I.F. was thirteen years old at the time, and defendant was thirty-one. This was not the first time she had sought refuge from her father. Once, at her request, she was sent to her biological mother's home, but it did not work out. On another occasion, she reported to authorities that her father had physically abused her, causing her temporary removal from the home. But, at some point, she said she lied, and her father regained custody.

-1-

[¶3.] When I.F.'s sexual abuse allegation was eventually reported to the authorities, Aurora County Sheriff David Fink and a Department of Social Services case worker went to defendant's home and spoke to I.F. I.F. told Sheriff Fink and the case worker of numerous instances of sexual attacks at the hands of her father. Defendant's home was searched, resulting in the seizure of several pornographic videos. I.F. was later interviewed by Child's Voice in Sioux Falls. She reported that defendant's sexual abuse had been going on for several years. The other seven children in the home were also interviewed by Child's Voice; each child denied any sexual abuse by defendant. Defendant was indicted on one count of first degree rape in violation of SDCL 22-22-1(1), five counts of third degree rape in violation of SDCL 22-22-1(5), and two counts of sexual contact with a child under the age of sixteen in violation of SDCL 22-22-7.

[¶4.] Before trial, the State filed a notice of intent to offer res gestae evidence, or in the alternative, other acts evidence. This consisted of all the uncharged sexual acts that I.F. said defendant committed against her in the previous five years. The State contended that this evidence was part of the res gestae because it arose out of the same series of transactions as the charged offenses. The court agreed and allowed the testimony.

[¶5.] The State further sought to offer defendant's 1994 conviction for sexual contact with a child. In December 1993, when defendant was seventeen, he had sexual contact with his thirteen-year-old stepsister. The State argued that the evidence of the prior conviction was relevant to show intent, motive, common scheme or plan, and identity. The court agreed, rejecting the argument that the

prior conviction was too remote in time, and finding that the current charges against defendant and the prior conviction involved similar victims and similar acts. As to the specter of unfair prejudice, the court ruled that use of a limiting instruction would sufficiently protect defendant. Moreover, the court found "that there is no other evidence of equal probative value that can be introduced to prove the charges contained in the indictment."

[¶6.]        Defendant sought to offer testimony on what defense counsel termed "third party perpetrator" evidence. If allowed, J.F., defendant's fifteen-year-old son, would be called to testify that it was he who had sexual contact with I.F., and not his father. In an interview with the sheriff, J.F. opined that someone in the house would have heard or seen his father and I.F. engaging in sexual relations if it had actually happened. Thus, he refused to acknowledge even the possibility that defendant might have committed the charged sex offenses. J.F. told the sheriff of his own sexual abuse by his biological mother and others. Then he claimed to have had sexual contact in various forms with all the children in the house, except the youngest. With respect to I.F., he first told the sheriff that he had sexual intercourse with her two or three times, describing details and locations. But by the end of the interview, although he persisted in saying that he molested the other children, he recanted his claim about I.F., saying that he never had sexual intercourse with her. When asked why he would falsely say he had sexual intercourse with his sister, J.F. said it was "because I don't want my Dad in trouble. . . ."

[¶7.] In denying admission of J.F.'s testimony, the circuit court ruled that "the probative value of J.F.'s [evidence] is greatly diminished by his contradictory statements, as well as his self-acknowledged belief in his father's innocence and desire to help his father. . . . Introduction of this lengthy and self-contradictory evidence, which involves numerous irrelevant claims of sexual misconduct by J.F. against other children (as well as past abuses by others against J.F.), would significantly confuse the issues and mislead the jury." *See* SDCL 19-12-3 (Rule 403).

[¶8.] At trial, I.F. was shown several DVD covers found in the search of defendant's home and identified a particular DVD as the one defendant made her watch. After she identified it and described a pornographic scene from the DVD that defendant had her view, Sheriff David Fink, who viewed the DVD, confirmed that such scene was on the DVD. The cover of the DVD was admitted to corroborate her testimony, but the DVD was not played for the jury. The title on the cover was "Fresh Teen Ass."

[¶9.] I.F. testified that over a period of five years, once or twice a week, defendant forced sexual relations on her, which included fellatio and sexual intercourse, with penetration of both her vagina and her anus; also foreign objects were used, such as a dildo, a bathroom plunger handle, a hairspray container, and a conditioner bottle. Medical testimony to substantiate this abuse came from two physicians. First to testify was Dr. Nancy Free, a pediatrician, who emphasized that greater than ninety percent of children who have been sexually abused have normal genital exams. With respect to I.F., Dr. Free noted that she had areas of

scar tissue on her genitalia and that her hymen had "changes consistent with chronic penetration." I.F.'s anal exam revealed no evidence of injury. Dr. Free concluded that I.F. "was a victim of probable child sexual abuse." Dr. Keith A. Hansen, an obstetrician and gynecologist, found evidence of "previous hymenal trauma, not acute."

[¶10.] Testifying for the defense was Dr. Rich Kaplan, a pediatrician. He is the Medical Director and an Associate Professor in a program at the University of Minnesota called the Center for Safe and Healthy Children, specializing in evaluating children who have been abused. As the founder of Child's Voice in Sioux Falls, Dr. Kaplan spent seven years there examining and treating physically and sexually abused children. Dr. Kaplan took issue with Dr. Free's conclusion that there was evidence of scarring on I.F.'s genitalia. From his viewing of the video taken in Dr. Free's exam, Dr. Kaplan "found nothing that was abnormal." I.F., in Dr. Kaplan's opinion, showed "no signs of recent or remote trauma" evident in the material he reviewed. Moreover, he questioned Dr. Free's statement that although scarring was not visible, she could feel it by the change in skin texture. He said there is "no medical data to support the feeling of that tissue relates to trauma." He also contradicted her conclusion about I.F.'s hymen. It was his conclusion that I.F. showed a "completely normal exam." Dr. Kaplan agreed, however, that sexually abused children may have no evidence of genital trauma.

[¶11.] Defendant testified at trial. He offered neither accident nor lack of intent as a defense. He denied entirely the sexual acts I.F. alleged. On September 19, 2008, after a four-day trial, the jury found him guilty on all charges. He was

sentenced to sixty years in the penitentiary, with five suspended, for the first degree rape conviction; fifteen years, with five suspended, for three of the third degree rape convictions; and twenty-five years with five suspended for the two remaining third degree rape convictions and the two sexual contact with a child convictions.[1] All the sentences were to run concurrently with the first degree rape sentence. Defendant appeals asserting that the court erred when it (1) excluded the third party perpetrator evidence, (2) allowed evidence of defendant's uncharged sexual acts against I.F., (3) admitted the cover of a sexually explicit DVD found in defendant's home, and (4) admitted evidence of his prior conviction. We find no abuse of discretion or error of law pertaining to defendant's Issue 3; consequently, we uphold that ruling without discussion, because it was decided in accord with well-settled principles.[2]

## Analysis and Decision

### A. Third Party Perpetrator Evidence

[¶12.] Defendant contends that J.F.'s claim of sexual relations with his siblings and step-siblings was improperly excluded. He argues that the evidence would have offered an alternative explanation to the jury for the medical experts' findings. J.F. is defendant's minor son, who lived with defendant and I.F. in

---

1. As the State points out in its appellate brief, the written judgment of conviction does not conform to the circuit court's oral sentence. The oral sentence controls over the written judgment.

2. On our standards of review applicable to these issues, we recognize that in reviewing difficult evidentiary rulings we must evaluate a circuit court's decisions "from its perspective when it had to rule and not indulge in review

(continued . . .)

defendant's home. In his interview with the sheriff, J.F. claimed and then denied having had sexual intercourse with I.F. He also claimed to have had sexual contact with all the other children in the home, except the youngest. None of the other children corroborated J.F.'s purported confession. He professed his belief in his father's innocence and insisted that I.F. was fabricating the abuse.

[¶13.] The court found the interview of J.F. to be relevant. It then engaged in a balancing test to examine whether the probative value of the evidence outweighed its possible prejudicial effect. The court considered that J.F. recanted part of his claims during the interview. The court also considered that J.F. is defendant's son who insisted on his father's innocence. J.F. claimed that I.F. was lying because she did not want to live in the house any longer. J.F. refused to recognize that his father could be guilty of the charges against him. In light of J.F.'s motivation to lie, his partial recantation, and the fact that J.F.'s testimony about other children in the home would mislead and confuse the issues, the court excluded the evidence.

[¶14.] We recently examined a court's exclusion of third party perpetrator evidence in *State v. Packed*, 2007 SD 75, 736 NW2d 851 (citation omitted). In that case, the defendant was convicted of first degree rape and sexual contact with a child who lived in his home. He sought to introduce evidence through cross examination of a witness that the victim had a relationship with a neighbor boy that she wanted to hide from her mother. He argued that the victim fabricated her

---

(. . . continued)
by hindsight." Old Chief v. United States, 519 US 172, 182 n6, 117 SCt 644, 651 n6, 136 LEd2d 574 (1997).

claims against him in order to hide her relationship with the neighbor boy. The court denied admission of the evidence on the ground that it was third party perpetrator evidence. On appeal, we emphasized that there is no rule flatly prohibiting third party perpetrator evidence in South Dakota. *Id.* ¶22. Rather, if the proffered evidence is relevant but challenged as unfairly prejudicial, confusing or misleading, we require trial courts to balance the probative value of the evidence against its possible prejudicial effect.

[¶15.]     In *Packed*, the balancing test was not conducted. *Id.* ¶24. In this case, the court performed the requisite balancing test and found that the probative value of the evidence was substantially outweighed by the risk that that evidence would have an undue tendency to move the jury to decide the case on an improper basis. We review these types of rulings under the abuse of discretion standard. *Id.* ¶17. Although "Rule 403 will not permit judges to exclude testimony in plain disbelief," here there was more than credibility in question. *See* State v. Wright, 1999 SD 50, ¶15, 593 NW2d 792, 799 (citations omitted). The proposed evidence, self-contradictory and embellished, threatened to distract the jury from the true questions at hand. We find no abuse of discretion.

## B. Uncharged Sexual Acts with the Same Victim — Res Gestae

[¶16.]     Defendant next asserts that the court abused its discretion when it allowed I.F. to testify about defendant's uncharged sexual contact with her that occurred in the five years preceding the charged offenses. All the charged offenses were alleged to have occurred in 2006 and 2007, but the State wanted to place before the jury all defendant's alleged sexual abuse from the time I.F. was eight

years old.  The court ruled that this testimony would be admissible as res gestae evidence.  Defendant argues that the court erred in concluding that the testimony was res gestae evidence rather than "other act" evidence under SDCL 19-12-5 (Rule 404(b)).  Defendant also contends that even if the evidence was other act evidence, it was an abuse of discretion to admit the testimony.  "We review a trial court's decision to admit other acts evidence under the abuse of discretion standard." *Wright*, 1999 SD 50, ¶12, 593 NW2d at 797 (citing State v. Loftus, 1997 SD 94, ¶21, 566 NW2d 825, 830 (citing State v. Ondricek, 535 NW2d 872, 873 (SD 1995))).

[¶17.]       In *State v. Floody*, we examined a trial court's admission of evidence related to uncharged instances of sexual penetration and sexual contact in a child sex abuse case.  481 NW2d 242, 252 (SD 1992).  The child victim testified that Floody raped her "all the time," although Floody was only charged with two counts of rape.  *Id.*  The victim also testified about uncharged sexual contact that occurred during the rapes.  In affirming the admission of the evidence, we stated that the testimony did not implicate SDCL 19-12-5 (Rule 404(b)).  Rather, the testimony about the victim being raped "all the time," was "part of a course of conduct," not evidence that "Floody probably committed the acts charged." *Id.* (citations omitted). It "constituted direct proof of the crimes charged." *Id.*  Additionally, the testimony about the uncharged sexual contact that occurred during the rapes was not other act evidence under SDCL 19-12-5 (Rule 404(b)), because it constituted "part of the circumstances of the charged crime." *Id*. at 253.  The uncharged sexual contact was so blended and connected to the rapes that proof of the rapes involved proof of the sexual contact.

[¶18.]     The circuit court relied on *Floody* and concluded that the testimony about the uncharged sexual abuse perpetrated by defendant on I.F. in the previous five years in various counties other than Aurora did not constitute other act evidence. The court considered the testimony to be directly and intrinsically related to the crimes charged, and therefore, admissible as res gestae evidence.

[¶19.]     Res gestae evidence has been defined as "the events at issue or others contemporaneous with them." Bryan A. Garner, Dictionary of Modern Legal Usage (2d ed 1995). As one court explained, res gestae evidence is "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood." Martinez v. People, 132 P 64, 65 (Colo 1913). I.F.'s testimony about the uncharged acts of rape and sexual contact defendant committed was not directly or intrinsically related to the charged rapes and sexual contact in Aurora County, nor were the acts contemporaneous with the charged acts. "Evidence [] of over fifty acts of sexual assault spanning a long time frame cannot be characterized as res gestae." Woertman v. People, 804 P2d 188, 190 n3 (Colo 1991) (emphasis omitted). I.F.'s testimony relating to the uncharged conduct was not res gestae evidence but other act evidence under SDCL 19-12-5 (Rule 404(b)).

[¶20.]     Other act evidence is admissible to prove such matters as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." SDCL 19-12-5 (Rule 404(b)). Also in *Floody*, we examined the admission of testimony related to non-contemporaneous uncharged sexual contact. 481 NW2d

at 253-54. The testimony was admitted, although it was extrinsic to the crimes charged, because it would show a continuous plan or scheme of criminal activity and establish intent to carry out the crimes charged in the indictment. The jury was instructed that they could only consider the evidence to determine whether Floody had a plan of continuous criminal activity. Finally, the court balanced the probative value of the evidence against its prejudicial effect, concluding that the evidence was "highly probative in showing a plan or course of continuous criminal activity." *Id.* at 254.

[¶21.]       Here, as in *Floody*, the testimony of the uncharged sexual contact with I.F. was not contemporaneous to the charged acts. The testimony related to conduct in three other counties and covered a five-year time span. This other act evidence, however, was probative in showing an uninterrupted chain or series of closely connected events between defendant and I.F., allowing the jury to realistically evaluate the charged events in light of the entire history of alleged sexual abuse committed against I.F. *See* Edward J. Imwinkelried, 1 Uncharged Misconduct Evidence § 6:29 (Rev ed 1998). To exclude this history would truncate the child's narrative and deprive the testimony of its "full evidentiary context." *Old Chief*, 519 US at 182, 117 SCt at 651, 136 LEd2d 574. Furthermore, the danger of unfair prejudice was diminished because the jury still had only I.F.'s credibility to consider. Although the court erred in concluding that this was res gestae evidence, the testimony was admissible under SDCL 19-12-5 (Rule 404(b)) and not unfairly prejudicial under SDCL 19-12-3 (Rule 403).

### C. Prior Conviction — Relevance and Remoteness

[¶22.] We must next decide whether the circuit court abused its discretion when it admitted evidence of defendant's fourteen-year-old conviction for sexual contact with a child. Defendant was a juvenile when he committed this offense and the victim was his thirteen-year-old stepsister. They did not live in the same home. He pleaded guilty to the charge, admitting to touching her bare breasts and digitally penetrating her. Relying solely on the fact that defendant denied committing the crimes charged here, the circuit court ruled the prior conviction admissible under SDCL 19-12-5 (Rule 404(b)) to prove intent, identity, plan, design or scheme. In its case in chief, the prosecution was permitted to call the detective who investigated the prior charge. The detective detailed the facts surrounding the conviction and read to the jury portions of the defendant's confession. The transcript of the entire confession was admitted into evidence, along with a certified copy of the judgment of conviction.

[¶23.] Under our rules, evidence of a defendant's other acts admitted only to show propensity is irrelevant and thus inadmissible. *Wright*, 1999 SD 50, ¶14, 593 NW2d at 798-99. The proponent of the evidence bears the burden of establishing its relevance. *Id*. SDCL 19-12-5 (Rule 404(b)) provides a nonexclusive list of purposes for which other act evidence could be used: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." To be considered relevant, evidence must logically tend to prove or disprove a material issue of fact. State v. Moeller, 1996 SD 60, ¶13, 548 NW2d 465, 472 (citing State v. Steele, 510 NW2d 661, 667 (SD 1994)); SDCL 19-12-1 (Rule 401) (to prove or

disprove "any fact that is of consequence to the determination of the action"); *see also* 22 Charles Wright and Kenneth Graham, Federal Practice and Procedure, § 5249 (1978) (footnotes omitted). For courts to be in the best position to decide whether an issue sought to be proved by other acts evidence is truly in dispute, "it is preferable to delay the admission of [other acts] evidence until the defense rests. . . ." State v. Werner, 482 NW2d 286, 290 (SD 1992) (quoting United States v. Estabrook, 774 F2d 284, 289 (8thCir 1985)).

[¶24.] Prior bad act evidence is not admissible simply because it shows conduct similar to the charged offense. The question is whether the prior bad act relates to a point genuinely in issue.[3] In *Wright*, we cautioned courts to independently apply each theory of admission to the facts of the case. 1999 SD 50, ¶17 n6, 593 NW2d at 800 n6. To be admissible, the other act must offer proof of an issue "relevant to the present offense," that is, the prior act evidence must have "a logically relevant purpose." *Id*. ¶¶14, 25. Here, the State listed several proposed theories and the circuit court declared the evidence admissible under those theories. Although the prior conviction was fourteen years old, the court did not find it to be too remote. The court concluded that defendant would be sufficiently protected

---

3. *See* State v. Harris, 365 NW2d 922, 926 (Wis 1985) (quoting the remarks of Lord Sumner in Thompson v. The King, [1918] App.C. 221, 232):

> Before an issue can be said to be raised, which would permit the introduction of evidence so obviously prejudicial to the accused, it must have been raised in substance if not in so many words. . . . The mere theory that a plea of not guilty puts everything material in issue is not enough for this purpose. The prosecution cannot credit the accused with fancy defenses in order to rebut them at the outset with some damning piece of prejudice.

from unfair prejudice by the use of a limiting jury instruction. Moreover, the court ruled that because there was no other evidence of equal probative value to prove the charges against defendant, the prejudice would not substantially outweigh the probative value of the evidence.

[¶25.]     In evaluating the admissibility of the evidence under SDCL 19-12-5 (Rule 404(b)), the court found that the prior conviction was sufficiently similar to the current charges to allow its admission to establish defendant's specific intent to arouse or gratify himself or his victim. Similarities identified by the court included the fact that both victims were family members: the first was his stepsister, the current one is his daughter. And the court also found similar the fact that both victims, at least at the time of the charges, were the same age.

[¶26.]     At the outset, we note that at least one of the court's reasons for declaring this prior offense relevant was wrong. Identity was never an issue in this case. I.F. unequivocally identified her father as the continuing perpetrator. No suggestion arose at trial on some possible misidentification. In most instances, admitting evidence of other crimes for the purpose of proving identity should occur when the question of identity is genuinely in issue. *See* State v. Goodrich, 432 A2d 413, 417 (Me 1981). In *Goodrich*, the court held that a prior bad act of the defendant should not have been admitted on the issue of the defendant's identity because there was no "question as to the identity of the perpetrator of the alleged crime. The defendant contended that the alleged rape did not, in fact, occur. Thus, evidence of other crimes would not have been admitted to prove . . . identity." *Id*.

[¶27.]     Furthermore, a defendant's purported disposition toward sexual misconduct is not enough to prove identity. United States v. Fawbush, 900 F2d 150, 151-52 (8thCir 1990). The real issue in this case was whether I.F. was telling the truth about her father. In a sexual assault case, identity is not actually in issue unless, under the evidence, the jury could reasonably conclude that the victim had been assaulted but had misidentified the assailant. People v. Pitts, 273 CalRptr 757, 882-83 (CalCtApp 1990). No dispute existed on identity here, especially as the circuit court excluded any third party perpetrator evidence. Admission of the prior conviction on this ground was a clear abuse of discretion.

[¶28.]     Assuming without deciding that this prior conviction was relevant for some other purpose allowable under SDCL 19-12-5 (Rule 404(b)), admission must still be weighed with the question of remoteness. Our rule on this subject is not rigid: it will depend on the facts of the case. *Wright*, 1999 SD 50, ¶24, 593 NW2d at 802. In analyzing whether a prior offense should be admitted, "[r]emoteness and similarity must be considered together because the two concepts are so closely related; the remoteness of a prior crime takes on increased significance as the similarity between the prior crime and the charged offense increases." Fisher v. State, 641 NE2d 105, 109 (IndCtApp 1994). Accordingly, "a prior bad act, despite its remoteness, may still be relevant if it is strikingly similar to the charged offense. Conversely, less similarity may be required where the prior act is closer in time to the charged incident." *Id.*

[¶29.]     In this case, the prior offense was not strikingly similar. Defendant was only four years older than his victim at that time. As to the current charges,

defendant was thirty-one, and I.F. testified that the sexual contact began when she was eight and ended when she was thirteen. Also, while it was asserted that both victims were family members, defendant was related to his prior victim only by marriage. She was his stepsister and did not live in the same home. I.F., on the other hand, is defendant's daughter and lived in the home with him. The lack of similarities between the current charges and the prior conviction and the remoteness in time tends to negate any relevance to prove intent, common plan, design, or scheme.

[¶30.]      On the remoteness question, furthermore, one aspect the circuit court appears to have overlooked in its §404(b) analysis is the fact that defendant was himself a juvenile when he committed the prior offense. A vital point, because, as the United States Supreme Court recently observed, "As compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility'; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.'" Graham v. Florida, 2010 WL 1946731 (2010) (quoting Roper v. Simmons, 543 US 551, 569-570, 125 SCt 1183, 1195, 161 LEd2d 1 (2005)). "[F]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Id*. (quoting *Roper*, 543 US at 570, 125 SCt at 1195, 161 LEd2d 1). Indeed, changes in a defendant's circumstances, such as age, "may render the earlier uncharged act too remote and legally irrelevant." Edward J. Imwinkelried, 2 Uncharged Misconduct Evidence § 8:8 (Rev ed 1998). Thus, a "time lapse could be fatal to admissibility of

the evidence if the defendant was a callow teenager at the time of the earlier crime." *Id*. "Because of the considerable changes in character that most individuals experience between childhood and adulthood, behavior that occurred when the defendant was a minor is much less probative than behavior that occurred while the defendant was an adult." State v. Barreau, 651 NW2d 12, 23 (WisCtApp 2002) (citations omitted) (error to admit prior offense committed when defendant was a minor).

[¶31.] We conclude that it was an abuse of discretion for the circuit court to admit the prior conviction: it was too remote in time and too dissimilar to be deemed relevant. Moreover, we cannot classify this error as harmless. *See* State v. Stanga, 2000 SD 129, ¶20, 617 NW2d 486, 491 (citing Arizona v. Fulminante, 499 US 279, 306, 111 SCt 1246, 1263, 113 LEd2d 302, 329 (1991); SDCL 15-6-61; SDCL 23A-44-14 (Rule 52(a)). The prosecution made this highly prejudicial evidence an integral part of its case. Improperly admitted prior bad act evidence may well be the "most prejudicial evidence imaginable. . . ." People v. Smallwood, 722 P2d 197, 205 (Cal 1986). From our review of the record, admission of this evidence was "inconsistent with substantial justice." *See* SDCL 15-6-61. Therefore, we reverse and remand for a new trial.

[¶32.] Reversed and remanded.

[¶33.] GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.