#25428-a-GAS

**2010 S.D. 94**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

v.

JOSHUA JOHN ARMSTRONG,                            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE TIM. D. TUCKER
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                                         Attorneys for plaintiff
and appellee.


N. BOB PESALL
Flandreau, South Dakota                                 Attorney for defendant
and appellant.


\* \* \* \*

ARGUED APRIL 27, 2010

OPINION FILED **12/15/10**

#25428

SEVERSON, Justice

[¶1.]     Joshua John Armstrong was convicted of Sexual Contact with a Person Under Sixteen in violation of SDCL 22-22-7. The trial court admitted evidence of Armstrong's 1999 conviction of Rape in the Third Degree as well as statements he made in group counseling sessions as part of the mandatory prison sex offender counseling program. The trial court also limited Armstrong's cross-examination of the victim regarding allegations of sexual abuse she made against another individual. Armstrong appeals. We affirm the trial court on all issues.

## BACKGROUND

[¶2.]     T.A. (Mother) is the mother of R.L., the thirteen-year-old victim in this case. Mother and Armstrong divorced in 2001, in part because Armstrong was convicted of Rape in the Third Degree on February 26, 1999, and was sentenced to a ten-year term of imprisonment in the South Dakota State Penitentiary. Armstrong was released on February 18, 2009. Upon release, Armstrong planned to return to the Flandreau, South Dakota, community to live with his mother, Paula Manwarren. But on February 18 and 19, 2009, after having dinner with his family at Manwarren's house, Armstrong spent the night at Mother's home.

[¶3.]     Upon arriving home from dinner on February 19, 2009, Mother told her four daughters to get ready for bed. She asked R.L. to go upstairs to get pajamas for her three younger sisters. Armstrong followed R.L. upstairs. R.L. testified that while she was in Mother's room looking for the pajamas, Armstrong came into the room to talk to her. Armstrong began speaking to R.L. about his Wiccan religion. Armstrong described a dream in which he saw R.L. lying naked on

- 1 -

a table surrounded by candles. As Armstrong described his dream, R.L. received a phone call from a friend. R.L. sat on Mother's bed while talking to her friend. Armstrong sat down beside R.L. and began touching her breasts. When asked at trial whether Armstrong touched her "more than once in more than one place," R.L. responded, "Yes." R.L. stated that Armstrong also touched her on her butt and in between her legs. R.L. moved away from Armstrong, but did not tell him to stop.

[¶4.] When R.L. finished her phone call, Armstrong began talking to R.L. about dragons. Armstrong told her that the dragons "wanted [her] for something" because she had a "special quality or a special thing that his dragons wanted from her." Armstrong threatened her, saying that the dragons could "do bad things, that . . . [they could] hurt her sisters." Armstrong said that R.L. could stop anything from happening to her sisters if she agreed to "take off [her] clothes." When R.L. refused, Armstrong told her that it was "right for parents to do bad things to their children" and promised R.L. that he "would make [her] bedtime later if [she] would let him do bad things to [her]." R.L. told Armstrong "it wasn't right" and left the room. Armstrong went downstairs and watched television with Mother.

[¶5.] Manwarren picked up R.L. and her sister from school the following day. When they arrived at R.L.'s home, R.L. told Manwarren that "she didn't want to go home, that she wanted to stay with [her]." Manwarren asked R.L. why she did not want to go home. R.L. told Manwarren that Armstrong was inside babysitting her younger sisters and that he "touched her" the night before. Manwarren took R.L. to see Mother at her workplace. After speaking with Mother, Manwarren

asked R.L. whether she wanted to confront Armstrong or whether she wanted to talk to the police. R.L. said that "she wanted to talk to the cops."

[¶6.] Special Agent James Severson of the South Dakota Division of Criminal Investigation interrogated Armstrong after he was arrested. Armstrong told Agent Severson that he followed R.L. upstairs so that he could talk to her. Armstrong told Agent Severson that he and R.L. began talking about "dragons and different things that are involved in the Wiccan religion." R.L. was "concerned because she wasn't having . . . visions" anymore. Armstrong explained that "she didn't have the visions because she is a Christian." Armstrong said that "[R.L.] was scared and was crying and wanted him to hold her and to hug her." "She hugged him and laid her head on his shoulder." "He was patting her head and she was kind of sitting on his lap next to him on the end of the bed." Armstrong said that he "put his hand on the side of her leg." When Agent Severson confronted Armstrong with R.L.'s allegations, Armstrong denied inappropriately touching her.

[¶7.] On March 6, 2009, a Moody County grand jury indicted Armstrong on one count of Sexual Contact with a Person Under Sixteen in violation of SDCL 22-22-7. The State filed a Part II Information on March 18, 2009, alleging that Armstrong was a habitual offender under SDCL 22-7-7 given his prior felony conviction of Rape in the Third Degree. The case proceeded to trial on July 9, 2009, and the jury found Armstrong guilty. Armstrong appeared before the trial court on September 2, 2009, for sentencing. The trial court, relying on the findings of the pre-sentence investigation, sentenced Armstrong to a twenty-five-year term of imprisonment in the penitentiary. Armstrong appeals.

## ANALYSIS AND DECISION

[¶8.] **1.** **Whether the trial court abused its discretion by admitting evidence of Armstrong's 1999 conviction of Rape in the Third Degree.**

[¶9.] On June 23, 2009, the State filed a Notice of Intent to Offer Other Acts Evidence. The State sought to introduce evidence of Armstrong's 1999 conviction of Rape in the Third Degree. Armstrong was twenty-two years-old at the time of the conduct giving rise to his prior rape conviction. On August 26, 1997, Armstrong attended a party at a home in Sioux Falls. At some point during the night, he noticed a fifteen-year-old female lying naked in a bedroom. Armstrong entered the bedroom and asked the female if she wanted to have sex. The victim, who was extremely intoxicated, said, "Yes." Armstrong began kissing her neck and breasts and had sexual intercourse with her. He later pleaded guilty to Rape in the Third Degree in violation of SDCL 22-22-1. The trial court admitted the evidence of Armstrong's prior rape conviction to show that he had the specific intent to arouse or produce sexual gratification when he touched R.L. and to rebut his defense of mistake or accident.

[¶10.] "[I]t is a settled and fundamental principle that persons charged with crimes must be tried for what they allegedly did, not for who they are." *State v. Moeller*, 1996 S.D. 60, ¶ 6, 548 N.W.2d 465, 468 (citing *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985)).

> Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by

showing that the defendant has engaged in other acts of wrongdoing.

*Id.* (quoting *Hodges*, 770 F.2d at 1479). "No matter how vile or despicable a person may appear to be, he or she is entitled to a fair trial." *Id.* "[I]ndividuals may only be convicted for the crimes with which they are charged; they may not be subject to criminal conviction merely because they have a detestable or abhorrent background." *Id.* (citing *Hodges*, 770 F.2d at 1479).

[¶11.] The admission of prior acts evidence is governed by SDCL 19-12-5 (Rule 404(b)), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"Prior . . . acts evidence is not admissible to show that, merely because a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged." *State v. Steichen*, 1998 S.D. 126, ¶ 17, 588 N.W.2d 870, 874 (quoting *Moeller*, 1996 S.D. 60, ¶ 12, 548 N.W.2d at 471). But prior acts evidence may be admitted for other purposes, including, but not limited to, those listed in SDCL 19-12-5 (Rule 404(b)).[1] *Id.* (citing *State v. Champagne*, 422 N.W.2d 840, 842 (S.D. 1988)). "It is the proponent of the prior act[s] evidence who must persuade the trial court that the evidence has some permissible purpose." *State v. Lassiter*, 2005

---

1. As evidenced by the language of SDCL 19-12-5 (Rule 404(b)), the list of the inclusions is not exhaustive. *State v. Fisher*, 2010 S.D. 44, ¶ 23, 783 N.W.2d 664, 672.

S.D. 8, ¶ 15, 692 N.W.2d 171, 176 (citing *State v. Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d 792, 798 (citing SDCL 19-12-1 (Rule 401))).

[¶12.]     A trial court must engage in a multi-prong analysis before admitting prior acts evidence. *Id.* (citing *State v. Ondricek*, 535 N.W.2d 872, 873 (S.D. 1995)). A trial court must consider (1) whether the intended purpose of the prior acts evidence is relevant to some material issue in the case other than character (factual relevance) and (2) whether the probative value of the evidence is substantially outweighed by its prejudicial effect (legal relevance). *Id.* (citing *Ondricek*, 535 N.W.2d at 873). *See United States v. Betterton*, 417 F.3d 826, 831 (8th Cir. 2005) ("For evidence of past crimes to be admissible under Rule 404(b), the evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the charged crime; (3) supported by sufficient evidence; and, (4) such that its potential prejudice does not substantially outweigh its probative value.") (citing *United States v. Williams*, 308 F.3d 833, 837 (8th Cir. 2002)). A trial court's admission of prior acts evidence is reviewed under the abuse of discretion standard. *State v. Jones*, 2002 S.D. 153, ¶ 6, 654 N.W.2d 817, 818-19 (quoting *State v. Chamley*, 1997 S.D. 107, ¶ 7, 568 N.W.2d 607, 611).

[¶13.]     Prior acts evidence first must have a permissible purpose and be relevant to some point genuinely in issue in the case. *Lassiter*, 2005 S.D. 8, ¶ 15, 692 N.W.2d at 176 (citing *Ondricek*, 535 N.W.2d at 873). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1 (Rule 401). "[M]uch more is

demanded than the mere repeated commission of crimes of the same class[.]" *Lassiter*, 2005 S.D. 8, ¶ 16, 692 N.W.2d at 176 (quoting McCormick on Evidence § 190, at 449 (Edward W. Cleary ed., 2d ed. 1972)). Prior acts evidence "offered for the sole purpose of establishing a propensity to commit a crime is irrelevant and therefore inadmissible." *Id.* ¶ 13, 692 N.W.2d at 175 (citing *Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d at 799).

[¶14.] But prior acts evidence may be admissible to prove "absence of mistake or accident." SDCL 19-12-5 (Rule 404(b)). Armstrong initially claimed mistake or accident when being interviewed by the police and then later raised that defense at trial. His counsel argued during opening statement that "nothing inappropriate happened." He conceded that Armstrong touched R.L., but maintained that it was done innocently in an attempt to comfort her. He contended that R.L. misunderstood an attempt at affection given her prior experience with male members of her household. *See infra* ¶ 24. In his closing argument, Armstrong's counsel argued that R.L. did not "know how to handle a loving hug." Armstrong made mistake or accident an issue at trial, and the evidence of his prior rape conviction was relevant to rebut his defense. Because it was offered for the permissible purpose of proving the absence of mistake or accident, the evidence of Armstrong's prior rape conviction was factually relevant. *See Lassiter*, 2005 S.D. 8, ¶ 13, 692 N.W.2d at 175 (citing *Wright*, 1999 S.D. 50, ¶ 14, 593 N.W.2d at 799).

[¶15.] We turn then to the question whether the prior acts evidence was legally relevant. *See id.* ¶ 15, 692 N.W.2d at 176 (citing *Ondricek*, 535 N.W.2d at 873). Even if relevant to a material issue of fact, prior acts "evidence may be

excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" SDCL 19-12-3 (Rule 403). "Prejudice does not mean infliction of damage to the opponent's case that results from the legitimate probative force [of] the evidence; rather, it refers to the capacity of the evidence to persuade the jury by illegitimate means." *State v. Smith*, 1999 S.D. 83, ¶ 19, 599 N.W.2d 344, 349-50 (citing *State v. Iron Shell*, 336 N.W.2d 372, 375 (S.D. 1983) (quoting 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5215, at 274-75 (1978))). "[I]n order to exclude the evidence, the danger of unfair prejudice must not only outweigh the probative value, . . . it must outweigh it substantially." *Id.*, 599 N.W.2d at 350 (citing *State v. Rhines*, 1996 S.D. 55, ¶ 94, 548 N.W.2d 415, 440; *State v. White*, 538 N.W.2d 237, 243 (S.D. 1995)).

[¶16.]     The remoteness and similarity of the prior act to the charged offense are significant factors in balancing probative value and prejudicial effect. *Fisher*, 2010 S.D. 44, ¶ 28, 783 N.W.2d at 673. Remoteness is not subject to a rigid rule, but will depend on the facts of the case. *Id.* (citing *Wright*, 1999 S.D. 50, ¶ 24, 593 N.W.2d at 802). Indeed, "remoteness and similarity must be considered together because the two concepts are so closely related[.]" *Id.* (quoting *Fisher v. State*, 641 N.E.2d 105, 109 (Ind.Ct.App. 1994)). *See Betterton*, 417 F.3d at 831 ("[T]o be admissible under Rule 404(b), the evidence must be . . . similar in kind and not overly remote in time to the charged crime[.]") (citing *Williams*, 308 F.3d at 837). "[T]he remoteness of a prior [act] takes on increased significance as the similarity between the prior [act] and the charged offense increases." *Fisher*, 2010 S.D. 44, ¶ 28, 783 N.W.2d at 673 (quoting *Fisher*, 641 N.E.2d at 109). "Accordingly, a prior . . .

act, despite its remoteness, may still be relevant if it is strikingly similar to the charged offense. Conversely, less similarity may be required where the prior act is closer in time to the charged [offense]." *Id.* (quoting *Fisher*, 641 N.E.2d at 109).

[¶17.] Here, the trial court considered the remoteness and similarity of the prior act to the charged offense. The trial court found that Armstrong's prior rape conviction was "similar in character and reasonably related to the offending conduct giving rise to the pending charges." Furthermore, because Armstrong was incarcerated and released just forty-eight hours before the charged offense occurred, the trial court noted that "the date of the prior offense and conviction [was] not so remote as to render [the] evidence irrelevant." The trial court thus found that the "probative nature and relevance of [evidence of Armstrong's prior rape conviction was] not substantially outweighed by its prejudicial impact on the defense." For these reasons, the trial court concluded that the evidence of Armstrong's prior rape conviction was legally relevant.

[¶18.] We must also consider the remoteness and similarity of the prior act to the charged offense. We agree that, given Armstrong's incarceration and release just two days before the charged offense, his prior rape conviction was not remote. Thus, under *Fisher*, less similarity between the prior act and the charged offense was required. *See id.* ¶ 29, 783 N.W.2d 673-74 (holding that fourteen-year-old sexual-contact conviction was not strikingly similar to the charged offense). Because Armstrong's victims were similar ages when the offenses occurred, the requisite degree of similarity existed in this case. The evidence of Armstrong's 1999

conviction of Rape in the Third Degree was therefore factually and legally relevant, and the trial court did not abuse its discretion by admitting it.

[¶19.]        **2.        Whether the trial court abused its discretion by admitting evidence of statements Armstrong made in group counseling sessions as part of the mandatory prison sex offender counseling program.**

[¶20.]        Armstrong argues that the trial court abused its discretion by admitting evidence of statements he made in group counseling sessions as part of the mandatory prison sex offender counseling program. At trial, the State presented the testimony of Sheila Kieso, a behavioral specialist employed by the South Dakota Department of Corrections, who counsels sex offenders incarcerated in the penitentiary. Kieso counseled Armstrong regarding sexual preferences and boundaries, relapse prevention, the offending cycle, and the impact of his crime on his victim. Kieso testified that Armstrong stated that "it was okay to have sex with children as long as they had their period, then they were able to have sex." Kieso also testified that when she asked Armstrong how "he perceived the law that he was convicted of" violating, "he said that it was man's law not God's law."

[¶21.]        We first consider whether Armstrong's statements to Kieso constitute inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3) (Rule 801(c)). Hearsay is generally inadmissible. SDCL 19-16-4 (Rule 802). But "[a] statement is not hearsay if it is offered against a party and is . . . his own statement, in either his individual or a representative capacity[.]" SDCL 19-16-3(1) (Rule 801(d)(2)(A)). The State offered Armstrong's statements to Kieso against him. His statements are therefore

admissions by a party opponent under SDCL 19-16-3(1) (Rule 801(d)(2)(A)) and are not inadmissible hearsay.

[¶22.] Armstrong argues that the statements he made to Kieso during group counseling sessions were not relevant. Although prior acts evidence offered for the sole purpose of establishing propensity is irrelevant, it may be relevant to prove "absence of mistake or accident." SDCL 19-12-5 (Rule 404(b)). Armstrong raised the defense of mistake or accident at trial, and Armstrong's statements to Kieso were relevant to rebut that defense. Armstrong's statements to Kieso were also relatively recent and bore sufficient similarity to the charged offense so that their probative value is not substantially outweighed by their prejudicial effect. *See* SDCL 19-12-3 (Rule 403). The trial court therefore did not abuse its discretion by admitting evidence of statements Armstrong made in group counseling sessions as part of the mandatory prison sex offender counseling program. *See State v. Anderson*, 2000 S.D. 45, 608 N.W.2d 644 (holding that the trial court did not abuse its discretion by admitting evidence of prior statements Anderson made concerning his preparations for kidnapping women under SDCL 19-12-5 (Rule 404(b))).

[¶23.]  **3.  Whether the trial court abused its discretion by limiting Armstrong's cross-examination of R.L. regarding allegations of sexual abuse she made against another individual.**

[¶24.] Before this case, R.L. twice made allegations of sexual abuse against male members of her household. In 1999, when R.L. was four or five years-old, she alleged that her uncle, Terrence Peltier, touched her inappropriately. Because Peltier was found incompetent to stand trial, R.L.'s allegations did not result in a conviction. In 2008, R.L. alleged that Mother's boyfriend, Obang Ogeli, touched her

inappropriately. R.L.'s allegations against Ogeli were similar to her allegations against Armstrong. Ogeli was ultimately convicted and is currently serving a prison sentence. The trial court permitted inquiry into R.L.'s allegations of sexual abuse against Ogeli, but not against Peltier.

[¶25.] Armstrong argues that the trial court abused its discretion by limiting his cross-examination of R.L. regarding the allegations of sexual abuse she made against Peltier. At trial, Armstrong's counsel conceded that Armstrong touched R.L., but maintained that the contact was not inappropriate. Because R.L. was the only witness to testify to the nature of the contact, Armstrong contends that R.L.'s credibility and experience were relevant. Armstrong argues that he should have been allowed to cross-examine R.L. regarding her prior allegations of sexual abuse so that the jury could assess whether he had the specific intent of arousal or sexual gratification when he touched her.

[¶26.] SDCL 23A-22-15 precludes evidence of specific instances of a victim's prior sexual conduct except when "the court shall first conduct a hearing in the absence of the jury and the public to consider and rule upon the relevancy and materiality of the evidence." "The rule pertains to 'prior sexual conduct,' which pre-supposes that it occurred." *State v. Juarez-Ralios*, 2010 S.D. 43, ¶ 59, 783 N.W.2d 647, 663. In *State v. Sieler*, we held that to become relevant the prior charge of rape must be shown to be "demonstrably false" as "prior truthful charges of rape are not relevant[.]" 397 N.W.2d 89, 92 (S.D. 1986) (quoting *State v. Kringstad*, 353 N.W.2d 302, 311 (N.D. 1984)). *See Juarez-Ralios*, 2010 S.D. 43, ¶ 59, 783 N.W.2d at 663; *State v. Guthmiller*, 2003 S.D. 83, ¶¶ 27-28, 667 N.W.2d 295, 305; *State v. Dillon*,

2001 S.D. 97, ¶¶ 23-26, 632 N.W.2d 37, 47-48. To do otherwise would turn "the trial into one of the victim." *Sieler*, 397 N.W.2d at 92 (citations omitted).

[¶27.] Only the trial court's exclusion of R.L.'s allegations against Peltier is at issue. "A trial court's rulings on limiting cross-examination will be reversed on appeal only when there is a clear abuse of discretion as well as a showing of prejudice to the defendant." *State v. Carter*, 2009 S.D. 65, ¶ 31, 771 N.W.2d 329, 338 (citing *State v. Koepsell*, 508 N.W.2d 591, 595 (S.D. 1993)). Peltier was found incompetent to stand trial, and the trial for sexual contact with R.L. did not proceed. Thus, the credibility of R.L.'s allegations was never raised. Even if Peltier had been acquitted, "[i]n some instances even a not guilty verdict on an asserted false charge may not be enough to make the prior accusations relevant[.]" *Sieler*, 397 N.W.2d at 92 (citation omitted). Because Armstrong has not demonstrated the falsity of R.L.'s allegations against Peltier, they are not relevant in this case. The trial court did not abuse its discretion by limiting Armstrong's cross-examination of R.L. regarding the allegations of sexual abuse she made against Peltier.

[¶28.] Affirmed.

[¶29.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶30.] ZINTER, Justice, concurs specially.

[¶31.] MEIERHENRY, Justice, concurs in result.


ZINTER, Justice (concurring specially).

[¶32.] I join the opinion of the Court. I write to address the concurrence in result's application of SDCL 19-12-5 (Rule 404(b)). The concurrence in result

concludes that the prior sexual misconduct with the first adolescent was too remote and too dissimilar to be relevant under SDCL 19-12-5 (Rule 404). The concurrence in result bases its conclusion on *State v. Fisher,* 2010 S.D. 44, 783 N.W.2d 664. But the admission of the prior act in *Fisher* was reversed because that defendant was a juvenile at the time of the prior act while Armstrong was twenty-two years-old at the time of his prior act. *Fisher* expressly noted that the defendant's juvenile status was "vital" to finding dissimilarity:

> [V]ital . . . because, as the United States Supreme Court recently observed, "As compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility'; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.'"

*Fisher,* 2010 S.D. 44, ¶ 30, 783 N.W.2d at 674 (quoting *Graham v. Florida,* __ U.S. __, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010)).

[¶33.] Even more importantly, unlike Armstrong, Fisher "offered neither accident nor lack of intent as a defense," the Rule 404(b) exceptions relied on by Judge Tucker in this case. *See id.* ¶ 11, 783 N.W.2d at 668. Rather, "[r]elying solely on the fact that Fisher denied committing the crimes charged [ ], the circuit court ruled the prior conviction admissible under SDCL 19-12-5 (Rule 404(b)) to prove intent, identity, plan, design or scheme." *Id.* ¶ 22, 783 N.W.2d at 672. We have often disapproved of this type of analysis broadly reciting the laundry list of possible SDCL 19-12-5 (Rule 404(b)) exceptions. *See State v. Chernotik,* 2003 S.D. 129, ¶ 30, 671 N.W.2d 264, 274-75; *State v. Wright,* 1999 S.D. 50, ¶ 17, n.6, 593 N.W.2d 792, 800. But Judge Tucker did not utilize this type of laundry-list

analysis. He allowed admission of the prior act only to rebut Armstrong's mistake defense and to prove specific intent.

[¶34.] These specific purposes for the admission lead to a fundamental flaw in the concurrence in result's similarity analysis. "The degree of similarity required for other act evidence will depend on the purpose for which it is offered." *Wright*, 1999 S.D. 50, ¶ 16, 593 N.W.2d at 800. More similarity is required when evidence is offered to prove identity rather than when offered to prove common plan or design. *State v. Big Crow*, 2009 S.D. 87, ¶ 17, 773 N.W.2d 810, 815; *Wright*, 1999 S.D. 50, ¶ 19, 593 N.W.2d at 800-01. And the degree of similarity required for intent and absence of mistake are on the lower end of the spectrum. "[T]he similarity of other acts to display that the act on trial was not inadvertent, accidental, unintentional, or without guilty knowledge is not required to be as great as in instances where common scheme, plan, or design is sought to be proved." *People v. Johnson*, 124 Mich.App. 80, 87, 333 N.W.2d 585, 589 (1983) (citing McCormick on Evidence (2d. ed.), § 190, p.450, n.42).

[¶35.] Thus, the concurrence in result's heightened similarity standard in this case fails to recognize that where other acts evidence is offered to show intent, the prior act need "only be of the same general category to be relevant." *People v. McGhee*, 268 Mich.App. 600, 611, 709 N.W.2d 595, 606 (2005) (citing *People v. VanderVliet*, 444 Mich. 52, 80, 508 N.W.2d 114, 128 (1993) (citing Edward J. Imwinkelried, Uncharged Misconduct Evidence, § 3:11 at 23)). As we have also concluded, "evidence of prior acts need not be that of an identical offense but only of similar involvement reasonably related to the offending conduct." *State v. Steichen,*

1998 S.D. 126, ¶ 30, 588 N.W.2d 870, 877; *State v. Loftus*, 1997 S.D. 94, ¶ 25, 566 N.W.2d 825, 830. "The litmus test is logical relevance rather than similarity." Imwinkelried, Uncharged Misconduct Evidence, § 5.05 at 14 (Rev. ed. 1999). *See also Wright*, 1999 S.D. 50, ¶ 25, 593 N.W.2d at 803 (stating that "404(b) requires that the evidence be offered for a logically relevant purpose").

[¶36.] In this case, the prior act was logically relevant to prove specific intent to obtain sexual gratification from adolescents and to prove the absence of mistake. As the Michigan Supreme Court explained, "when the evidence is proffered to rebut innocent intent, to show motive, consciousness of wrongdoing, true plan, or knowledge," distinctive similarity between other acts and the charge at issue is not required. *VanderVliet*, 444 Mich. at 69, n.21, 508 N.W.2d at 124. Evidence of prior sexual assaults is logically relevant and probative of the defendant's intent "because it negates the otherwise reasonable assumption that the contact described in testimony by [the victim] was accidental, as opposed for the purpose of sexual gratification." *Id*. at 80-81, 508 N.W.2d at 129.

[¶37.] The concurrence in result focuses on certain factual dissimilarities in Armstrong's age, his relationship with the victims, the anatomical and geographical location of the touchings, and the use of alcohol. It also focuses on dissimilarities in the legal elements of the two offenses. Although such dissimilarities are often important in identity cases, they have significantly less relevance in determining *mens rea*. In examining logical relevance to prove *mens rea*, simple unlawfulness of the charged and uncharged acts, similarity of the victims, similarity of the subject matter of the offenses, similarity of the physical elements of offenses, and similarity

of state of mind are the determinative comparisons. *Imwinkelried*, § 5.09 at 30 (Rev. ed. 1999). In this case both sexual acts were unlawful; both victims were adolescents; both acts involved adult sexual abuse of adolescents who either were or were dreamed by Armstrong to be lying naked; and, Armstrong believed that it was permissible to have sexual relations with adolescents. These similarities make it logically relevant; i.e., less likely under the doctrine of chances[2] that R.L. was mistaken about the nature of Armstrong's hugging and touching and that Armstrong's hugging and touching were without intent to obtain sexual gratification.

[¶38.] With respect to remoteness, Armstrong was incarcerated for twelve years between the two acts, but as the trial court observed, the relevant time period was the forty-eight hours after Armstrong's release from prison when he instigated sexual contact with R.L. And this Court has "steadfastly refused to adopt an inflexible rule on remoteness." *Wright,* 1999 S.D. 50, ¶ 24, 593 N.W.2d at 802

---

2. The doctrine of chances is described in *VanderVliet*:

> This theory is widely accepted although its application varies with the issue for which it is offered. Where material to the issue of *mens rea*, it rests on the premise that "the more often the defendant commits an actus reus, the less is the likelihood that the defendant acted accidentally or innocently[.]"

444 Mich. at 80 n.35, 508 N.W.2d at 128 n.35 (quoting *Imwinkelried*, § 3:11 at 22-23). *See also* 22 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5247, at 517-19 (1st ed. 1978).

> Often the absence of mistake or accident is proved on a notion of probability; i.e., how likely is it that the defendant would have made the same mistake or have been involved in the same fortuitous act on more than one occasion.

(citing *State v. Wedemann,* 339 N.W.2d 112, 115 (S.D. 1983) (stating that asserted remoteness of prior acts will "realistically depend upon their nature")). *See also State* v. *Ondricek,* 535 N.W.2d, 872, 877 (S.D. 1995) (holding that bad acts conducted twenty years earlier were not too remote); and *State v. Christopherson,* 482 N.W.2d 298, 302 (S.D. 1992) (holding that molestation that occurred seventeen years earlier was not too remote).

[¶39.]     Admission of prior acts evidence "is within the trial court's discretion." *State v. Larson,* 512 N.W.2d 732, 736 (S.D. 1994). "Upon review of whether the trial court abused its discretion in admitting evidence of other wrongs we must be careful not to substitute our reasoning for that of the trial court. The test is not whether judges of this [C]ourt would have made an original ruling." *Id.* "An abuse of discretion has been defined by this Court as a decision which is not justified by, and clearly against reason and evidence." *State v. Moeller,* 1996 S.D. 60, ¶ 141, 548 N.W.2d 465, 495. It is not against reason and evidence to admit evidence of prior sexual relations with one adolescent to rebut an adult's defenses of mistake and lack of specific intent to obtain sexual gratification from a second adolescent.

MEIERHENRY, Justice (concurring in result on issue one).

[¶40.]     I concur with the majority on issues two and three, but concur in result on issue one. I disagree with the majority's conclusion that Armstrong's prior rape conviction was admissible under SDCL 19-12-5 (Rule 404(b)). The facts of that ten-year-old conviction are too dissimilar to be admissible in the trial on the current charged offense. *See supra* ¶ 16. Nevertheless, I would not find its admission into evidence to be reversible error.

[¶41.]     This Court recently addressed the admissibility of a prior sex crime conviction in *Fisher*, which discussed the degree of similarity required for a prior conviction to be relevant as a prior act under SDCL 19-12-5 (Rule 404(b)). *Fisher*, 2010 S.D. 44, ¶ 29, 783 N.W.2d at 673-74. Fisher was charged with sexual contact and raping his daughter. The trial court admitted Fisher's prior conviction for sexual contact with his thirteen-year-old stepsister, which occurred fourteen years earlier when Fisher was a juvenile. *Id.* ¶ 22, 783 N.W.2d at 671-72. Fisher's prior act was introduced to prove intent, identity, plan, design, or scheme. *Id.* In the prior case, Fisher was approximately seventeen years-old, only four years older than his thirteen-year-old stepsister with whom he had sexual contact. In the subsequent case, Fisher was thirty-one years-old and the victim was his thirteen-year-old daughter. *Id.* ¶ 29, 783 N.W.2d at 673-74. In the prior case, Fisher and his stepsister did not live in the same home when the incident occurred. In the subsequent case, Fisher's daughter was living with him when he committed the sexual contact and rape. *Id.* Ultimately, we determined that the prior act was inadmissible because it was too remote and that the facts were too dissimilar to be relevant. *Id.* ¶ 31, 783 N.W.2d at 674.

[¶42.]     Here, Armstrong's prior rape conviction is similarly remote in time and dissimilar in circumstances. The prior incident took place twelve years before the current incident. Armstrong was twenty-two years-old at the time. He is now thirty-three years-old. The prior victim was a fifteen-year-old female with whom he was casually acquainted. The current victim is Armstrong's thirteen-year-old daughter. In the first incident, Armstrong was only seven years older than the

victim, and here he is twenty years older than his daughter. The prior incident took place at a house party where alcohol was involved, and both Armstrong and the victim were intoxicated. It occurred when Armstrong saw the victim lying naked on a bed in one of the bedrooms. He entered the bedroom and asked if she would like to have sex. Since the victim was under the age of consent, Armstrong was charged with third-degree rape. In this case, the alleged sexual contact took place in his daughter's home where Armstrong was an overnight guest. Alcohol was not involved. Further, Armstrong is the victim's biological father, and there is no allegation that he attempted to have intercourse with her. Additionally, the current charged offense is sexual contact with a child under sixteen, not rape.

[¶43.] Even though the majority discounts the remoteness of this prior incident because of Armstrong's imprisonment, the passage of time should still be a factor in the degree-of-similarity analysis. *Id.* ¶ 31, 783 N.W.2d at 673. *See also Chamley*, 1997 S.D. 107, ¶ 16, 568 N.W.2d at 613-14. In this case, the prior act is too remote and the facts are too dissimilar to be relevant under SDCL 19-12-5 (Rule 404(b)) to prove absence of mistake or accident.

[¶44.] As the majority points out, a person should be tried for what he did, not for who he is. *See supra* ¶ 10. SDCL 19-12-5 (Rule 404(b)) clearly prohibits the admission of prior acts "to prove the character of a person in order to show that he acted in conformity therewith." We said in *Steichen*: "Prior [ ] acts evidence is not admissible to show that, merely because a defendant committed a similar offense on another occasion, he has a propensity to commit the offense charged." 1998 S.D. 126, ¶ 17, 588 N.W.2d at 874 (quoting *Moeller*, 1996 S.D. 60, ¶ 12, 548 N.W.2d at

471). SDCL 19-12-5 (Rule 404(b)) also prohibits the State from offering prior acts to show propensity, i.e. inclination. Here, the prosecutor told the judge that one of the reasons he was offering Armstrong's prior rape conviction was to show "that [Armstrong] has an inclination to commit sexual crimes or contact with minors."

[¶45.]    Even though the trial court gave a limiting instruction during trial that the prior act could be considered to show absence of mistake or accident, the final instructions allowed the jury to consider the prior act "to show an inclination to commit the act complained of."[3] I would thus conclude that under the facts and circumstances of this case, it was an abuse of discretion to admit evidence of Armstrong's prior rape conviction. The circumstances and nature of Armstrong's prior rape conviction were too remote and dissimilar when compared to the facts of the current charged offense.

[¶46.]    Nevertheless, I am not convinced its admission warrants reversal. Unlike *Fisher,* the prosecutor did not make the prior conviction a centerpiece of his

---

3.    Although the instruction is problematic, Armstrong did not object to the jury instruction at trial or challenge it on appeal. Jury Instruction 6A provided:

> Evidence has been introduced that the Defendant committed an offense (or act) other than that which is now charged.
> Although evidence of this nature is allowed, it may be used only to show an inclination to commit the act complained of, or absence of mistake or accident. You may not consider it as tending to show in any other respect the Defendant's guilt of the offense with which the Defendant is charged. Before determining whether to consider this evidence, you must first determine if a preponderance of the evidence established that the Defendant committed the other acts.
> You are not required to consider this evidence and whether you do is a matter within your exclusive province.

case. It was only briefly described by one of the witnesses, who merely repeated Armstrong's version of the incident. The prosecutor did not use it in his closing argument to the jury. Instead, the prosecutor emphasized that the jury's decision hinged on whether they believed the daughter's testimony. As such, the error does not merit reversal.